## CHARLEY THOMPSON v. STATE.

No. A-2679.   Opinion Filed January 26, 1918.

(169 Pac. 1125.)

INTOXICATING LIQUORS—Principal—Statute—Evidence. To constitute one a party to a crime under section 2104, Rev. Laws 1910, it is necessary that such person either commit the crime himself or aid, abet, or counsel its commission. For facts which fail to disclose guilt under this rule see opinion.

*Appeal from County Court, Bryan County;*

*J. L. Rappolee, Judge.*

Charley Thompson was convicted of violating the prohibitory liquor law, and he appeals. Reversed, and remanded for a new trial.

*George Trice,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, Charley Thompson, was charged in the county court of Bryan county, jointly with G. T. Hazeltine, William Huddart, and Gordon Gregg, with unlawfully conveying intoxicating liquors from one place in Bryan county, Okla., to another place therein, and upon conviction by a jury was ad-

judged to pay a fine of $150 and serve a term of 60 days. in the county jail. The appeal is as to Thompson only.

It appears from the evidence introduced on behalf of the state that Hazeltine was engaged in transporting intoxicating liquors from Dallas, Tex., to a point near Caddo, in Bryan county, Okla., for one Oscar Moon, who lived at Coalgate, and was engaged in the illicit sale of intoxicating liquors at that place; that Moon was in the habit of sending a wagon and team to meet automobiles furnished and driven by Hazeltine and his employees at a point near Caddo in Bryan county; that Gregg was in the employ of Hazeltine; that Huddart was a regular employee of Moon. Moon had paid Hazeltine for bringing the whisky to the place where it was seized. The payment was made by checks signed by Moon which were delivered by Huddart in person. These checks were identified by Huddart and introduced in evidence in the case.

Thompson appears to have been employed occasionally by Moon and Huddart, and made the trip in question to a point near Caddo in a wagon in company with Huddart. Upon reaching the vicinity of Caddo in the afternoon, Huddart left Thompson and the wagon, walked to Caddo, and took a train to Denison, Tex., where he met Hazeltine and Gregg.

The violation of the prohibitory liquor law out of which this prosecution arose occurred in November, 1915. Upon this occasion Hazeltine and Gregg, who lived at Denison, Tex., went to Dallas, Tex., about the 1st of November, and secured between 90 and 100 gallons of whisky and brought it to Denison in two Ford automobiles. They were met at Denison by Huddart. The three drove in automobiles to a point near Caddo, and were

followed by officers of Bryan county. When they arrived at a point where the wagon and team driven by Huddart and Thompson from Coalgate was camped for the night, they began to unload the whisky onto the ground. One or two cases had been placed in the wagon. The officers came up and arrested them while they were engaged in unloading and reloading the whisky. Hazeltine, Huddart, and Gregg were doing the work. Thompson was asleep in the wagon, and according to the officers had taken no part in the transaction. He was awakened and taken into custody, however, and a charge was filed jointly against the entire party.

There is no proof offered which in any way connects Thompson with the transportation of the whisky from Denison, Tex., to the point where it was being loaded into the wagon, or which shows that he was in any wise interested therein.

The entire record is silent as to any affirmative act or utterance on the part of the plaintiff in error, Thompson, that in any way indicates that he had assisted, aided, or abetted in the offense for which he was convicted.

The only assignment of error that we shall discuss is based upon the proposition that the proof fails to connect the defendant with the commission of the offense charged, and that the verdict is therefore contrary to the law and the evidence.

The state relies upon the provisions of section 2104, Rev. Laws 1910, to sustain this conviction. This section is as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they

directly commit the act constituting the offense, or aid. and abet in its commission, though not present, are prin-- cipals."

We are of opinion that the proof disclosed by the record does not bring the plaintiff in error under the provisions of this section of the statute as construed by this court in *Moore v. State*, 4 Okla. Cr. 212, 111 Pac. 822. In the Moore Case it is said:

"To constitute one a party to a crime under this stat- ute, it is necessary that such person be concerned in the commission of the offense, that is, that he either commit. it or aid or abet in its commission; and it is not sufficient that he merely acquiesced therein. Consenting and acqui-- escing are mere mental acts, which, unless communicated to the perpetrator of the offense, in no manner aid or abet him in its perpetration. To be concerned in the commission of crime, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. But a mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel, and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such a person a partici- pant in the crime."

The facts disclosed clearly indicate to our mind that Thompson fully intended to convey the whisky in ques- tion from the point near Caddo, in Bryan county, where it was delivered, to Coalgate, in Coal County, Okla., but the officers made the arrest at an inopportune time to fasten the guilt on him as to the transportation of the liquor from Denison, Tex., to the point where it was de- livered. Since the state's testimony indicates clearly that this part of the work was done by Hazeltine and his em-

ployees, and was not participated in, directly or indirectly, by Thomspon, the conviction cannot be sustained.

The criminal laws cannot be made to punish a person for criminal intent unexpressed by any action, but can only be made to punish his criminal act done by himself or another who is influenced to do the same by him or counseled, aided, or abetted in doing such act by him. The intent may have existed, and no doubt did, but the act had not been accomplished at the time of the arrest.

The judgment is reversed, and the cause remanded, with directions to grant a new trial.

DOYLE, P. J., and MATSON, J. concur.