## NOAH TUCKER v. STATE.

No. A-11136.    March 23, 1949.

(204 P. 2d 540.)

F. J. Lucas, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, Noah Tucker, defendant below, was charged by information, tried and convicted of the crime of robbery of Harris Condreay in Tulsa county, Okla., on the 26th day of January, 1948, by means of force and fear by use of firearms, to wit, a pistol, and was sentenced to 25 years in the penitentiary.

Briefly, the record discloses that Harris Condreay, a filling station attendant employed by John Marlar, was operating a filling station at Third and Denver in Tulsa, Okla. On the night of January 26, 1948, while said Condreay was alone in attendance at the said station, about 2:30 a.m., the defendant Noah Tucker came in to use the restroom, and remarked it was awfully cold. He remained in the restroom only a few minutes and walked out, again mentioning the fact it was cold. Immediately thereafter Condreay heard a car door slam and got up and walked to the door to see if a car was going to pull out on either side of the station but he saw no car there and did not look behind the station. He started to walk to the east door, and the car pulled out into the east drive. Richard Johnson, who participated in the robbery, got out

on the left-hand side of the car, on the driver's side. Condreay asked him what he wanted, and he told him to put in three gallons of gas, which he did. Johnson then asked him where the restroom was, and he told him inside. Henry Zot Deck, another participant in the robbery, had gotten out on the right-hand side of the car and walked inside of the station to the restroom. Condreay said that he noticed another man in the car but did not pay any attention, and did not recognize who it was. Johnson and Deck walked out of the restroom as Condreay was leaning up against the cash register. Johnson walked up to Condreay's side and had his left hand in his overcoat pocket all of the time; he stuck his hand in Condreay's left side and told him to get in there and pushed and pulled him into the restroom, going into his pockets and taking everything. From Condreay's pockets he took five or six dollars and asked where the rest of the money was and Condreay told him it was in the cash register and he wanted to know how to get into the cash register. Condreay said he would have to use the crank and Johnson asked where it was. Condreay took the crank from his hip pocket and handed it to Deck who opened the cash register and took $56 therefrom. Johnson then asked if the door to the restroom could be locked. Condreay told him "No, not from the outside", whereupon Johnson pulled the door to and told Condreay to stay "in there until we get gone". Condreay said he stayed until the '38 Plymouth coupe pulled out of the driveway, in which he said the men were riding, and thereafter he reported the robbery to the police station. He was unable to identify the defendant as the third man who remained in the car, and stated positively he did not know who the man was.

The record further discloses that Officers Walter Turner and Jim Cleveland of the Tulsa police force earlier

in the night had received a radio flash on their 2-way radio about a 1939 Plymouth coupe that had been stolen that night, and some time thereafter they received another flash that there had been a robbery of the Wilcox Filling Station at Third and Denver with a description of the automobile. The two descriptions tallied and they began a search. Shortly thereafter they drove out on the Sand Springs road hunting for the automobile. On the Sand Springs road they spotted the car, a '39 model coupe, dirty color and a commercial tag on it as described in the flash. They drove within ten or fifteen feet of the back of the car and opened their siren whereupon the automobile being signalled drove faster. The occupants of the car began to get excited and tried to get it to go faster. It would not take them like they wanted to go, so one man jumped out and got away. The officers said they shot twice in the air, then they shot into the back of the car and the two remaining occupants pulled over to a stop and the defendant Noah Tucker and Richard Johnson got out of the car. Thereafter Johnson and Tucker were returned to the filling station. Johnson was identified as the man who shoved him in the restroom and Noah Tucker was identified not as a participant in the robbery but as the man who came into the restroom immediately before. The next morning they picked up Henry Zot Deck. He was brought back to the filling station and identified by Condreay as being one of the men who participated in the robbery.

The record further discloses that Detectives Fisher and Smith and John Marlar talked to the defendant at the police station; that the defendant admitted that he was with the other two men Johnson and Deck; that they had been together all night and had been riding in a taxi until they picked up the Plymouth coupe on

South Peoria about the 500 block in Tulsa, and drove around awhile and into the Wilcox Service Station at Third and Denver. The record further discloses that he told them that he got out and went to use the restroom and sat in the car while the other boys robbed the place. He said he went inside to see what was going on and who all was in there, that thereafter he went and got back in the car, and Johnson and Deck drove the car around the front of the filling station, and he sat in the car while the station was robbed; that thereafter they drove out on the Sand Springs road where they were apprehended by the officers; that he told them Deck jumped out of the car and took the money and the pistol with him.

The record further discloses that at the time defendant Tucker, Johnson and Deck were arrested they had been drinking, in fact, they were drunk.

The competency of the foregoing evidence is unquestioned.

The day after the robbery was committed a pistol was found on the Sand Springs road by a police officer. There was no evidence tending to connect defendant, Tucker, with this pistol, and no evidence introduced to show this pistol was used in the robbery. This evidence was permitted to go to the jury over the defendant's objection.

The record discloses the state was permitted to offer evidence through officer Fisher in relation to the conversation he had with defendant Tucker as follows:

"Q. Did you have any other conversation with him with reference to how long he had been with these boys; how long he knew them or anything? A. That is right, we did, we asked him how long he had known the boys

and he said several years, because they had been in the penitentiary at McAlester— Mr. Lucas: Just a minute. A. And Granite together. Mr. Lucas: Objected to as incompetent, irrelevant and immaterial. He may tell how long he had known them. The Court: Objection overruled. Mr. Lucas: Exception. Q. (By Mr. Devine): Just repeat that answer. A. He said he had known them several years because they had been in McAlester and Granite Penitentiary together."

The defendant's objection to this evidence was overruled. In this connection the defendant at no time took the stand or put his character in issue. Upon this state of the record the case was permitted to go to the jury.

The defendant contends that the evidence was wholly insufficient to support the verdict. With this contention we cannot agree. This court has repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Criminal Court of Appeals will not interfere with the verdict, and that it is the exclusive province of the jury to weigh the evidence and determine the facts. Butler v. State, 87 Okla. Cr. 369, 198 P. 2d 221, Boulding v. State, 83 Okla. Cr. 352, 177 P. 2d 152; Smiley v. State, 72 Okla. Cr. 100, 113 P. 2d 838; Sweat v. State, 69 Okla. Cr. 229, 101 P. 2d 648; Freeman v. State, 69 Okla. Cr. 164, 101 P. 2d 653, 654, and many others. In this connection this court has repeatedly held it will not reverse a case for insufficiency of evidence unless it can say there was no positive evidence in the record upon which the verdict could be based. Wire v. State, 87 Okla. Cr. 44, 194 P. 2d 212. We are convinced there is ample basis in the competent evidence upon which the jury could conclude beyond a reasonable doubt the defendant was guilty as charged.

The defendant relies on Carrico v. State, 16 Okla. Cr. 118, 180 P. 870, to the effect:

"To constitute one a party to a crime, it is necessary that such person be concerned in its commission. He must either commit it, or aid and abet in its commission, and it is not sufficient that he merely acquiesces therein with knowledge that another is committing the offense."

And Crabtree v. State, 18 Okla. Cr. 125, 193 P. 1005, as follows:

"It may be stated, as a general proposition, that no one can be properly convicted of a crime that he did not commit, or to the commission of which he has never expressly or impliedly given his assent."

And Sanders v. State, 48 Okla. Cr. 65, 289 P. 798:

"To constitute one a party to a crime * * * it is necessary that such person be concerned in the commission of the offense; that is, that he either committed it himself or that he procured it to be done, or aided, assisted, abetted, advised, or encouraged its commission, and it is not sufficient that he merely acquiesced therein."

And also Thompson v. State, 14 Okla. Cr. 209, 169 P. 1125; Smith v. State, 66 Okla. Cr. 408, 92 P. 2d 582; Moore v. State, 4 Okla. Cr. 212, 111 P. 822; Drury v. Territory, 9 Okla. 398, 60 P. 101; and Anderson v. State, 66 Okla. Cr. 291, 91 P. 2d 794, wherein in the latter case it was held that a mere mental assent or acquiescence in a crime was not sufficient to warrant a conviction. These cases are not in point with the case at bar. Here the defendant did not merely acquiesce in the commission of this crime, but, first, he aided and abetted as a scout or observer who got the lay of the land before the crime was committed. We are convinced that the only

object in his going into the restroom before the robbery, as he admitted he did, was to get the lay-out and report back to Johnson and Deck if the attendant was alone, which proved to be the case. Second, we are also convinced that the circumstances point conclusively to the fact that he was the third party in the car at the time of the robbery. Third, positive evidence in his own admissions establish he fled with and accompanied the perpetrators of the robbery, Deck and Johnson, until his arrest and the arrest of Johnson. So far as competent evidence is concerned the foregoing was proper for the consideration of the jury.

Next the defendant contends that the pistol found in the vicinity of the place of his arrest and the arrest of Johnson was introduced in evidence without identification that it had been used in the robbery, and that the evidence does not connect him with this identical pistol in any way. The record discloses the only connection shown is that, by the defendant's admissions to the police, a pistol was used in the robbery, and that Zot Deck fled from the car with a pistol, immediately preceding the arrest of the defendant and Johnson. It is fundamental that without connecting identification it was error to introduce the said pistol in evidence, but not such error standing in face of the defendant's admissions as would merit reversal. Under these conditions, he was not prejudiced by the introduction in evidence of the pistol.

In relation to the foregoing evidence by Officer Fisher as to the defendant admitting he had known Johnson and Deck in the penitentiary at McAlester and the reformatory at Granite, and his voluntary statements, counsel for the defendant immediately objected to this testimony and his objection was overruled. The county at-

torney requested the witness Fisher to repeat the answer. Both the court and the county attorney were in error. In this connection this court has repeatedly condemned the practice of experienced peace officers while on the witness stand making voluntary statements prejudicial to the rights of the defendant on trial. Wire v. State, supra; Harris v. State, 88 Okla. Cr. 422, 204 P. 2d 305; Holleman v. State, 74 Okla. Cr. 258, 125 P. 2d 239.

This case presents one of the most deliberately flagrant situations of a prejudicial voluntary statement by an experienced peace officer, presented to this court. The trial court should have sustained the objection to the voluntary statement and admonished the jury, but it did not do so. However, a review of the entire record convinces us that the jury was justified in finding the defendant guilty. Moreover, we are convinced a re-trial of this case would only result in another jury finding the defendant guilty. Since the imposition of penalty was left up to the court and the court made no further inquiry as to the defendant's prior record, we could only assume that in pronouncing the judgment and sentence, the trial court was influenced by this highly incompetent evidence in fixing the penalty, to the defendant's prejudice. Therefore, under the conditions and the provisions of Title 22 O.S.A. 1941 § 1066, the judgment and sentence should be and hereby is accordingly modified to 15 years in the penitentiary, and as so modified, is affirmed.

JONES, P. J., and BAREFOOT, J., concur.