**J. B. WRIGHT, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A–12142.

Criminal Court of Appeals of Oklahoma.
June 22, 1955.

Sam J. Goodwin, Pauls Valley, Jess L. Pullen, Oklahoma City, W. D. Hart, Pauls Valley, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

LITTLE, Special Judge.

The defendant, J. B. Wright, was tried and convicted in the District Court of Garvin County, Oklahoma, for the crime of arson in the second degree and was sentenced to serve a term of five years in the State Penitentiary. The offense was alleged to have been committed in Garvin County on or about the 10th day of March, 1954.

The charging part of the information is as follows:

"J. B. Wright, late of said County and within the jurisdiction of this Court, did then and there unlawfully, wilfully, knowingly, maliciously and feloniously, in the night time of said day, set fire to and burn a certain building, towit: an uninhabited building and business house of one J. B. Wright, then and there situated at 120 N. Chickasaw, Pauls Valley, Oklahoma, with the unlawful, malicious and felonious intent then and there on the part of him, the said J. B. Wright, to burn and destroy the said building; contrary to the form of the Statutes made and provided, and against the peace and dignity of the State."

On the night of March 10, 1954, Edward C. Patchell, Fire Chief of Pauls Valley, Oklahoma, and the other members of the Fire Department were called to the location of Wright Motor Company at 120 North Chickasaw. After working with the fire about one hour the firemen located the glow and, in about fifteen minutes thereafter, put out the fire. After the fire was put out, the firemen located two 30-gallon drums that apparently had been filled with paint thinner. The bung hole on both barrels was open and one was open with a rag or cloth from the stand extended down to the floor. Paper was scattered over the floor five or six inches thick. Most of the paint thinner burned up. On account of the building being made of reinforced concrete and the further fact that there was no ventilation, the building did not burn down. The record is replete with evidence that the fire was of an incendiary nature.

The State Fire Marshal's office was notified and by 11 o'clock on March 11, 1954, had Kile Morehead on the case, with other officers. One Albert (Zuke) Brown was taken into custody. Brown was with the officers for a period of three days. They moved him around from one place to another and finally, on Sunday following the fire, he decided to tell about the fire and testify for the State.

Also one Willis Holland Eppler was taken into custody for a period of time and

he also testified for the prosecution to the extent that he told about contacting Brown for Wright and promised to pay Brown $100.

Since this case will likely be tried again, we will pass on all substantial assigned errors.

■ Plaintiff first assigns that the information above is insufficient. We think the information sufficiently describes every essential element of the crime of second degree arson. It is clear and concise and is sufficient to apprise the accused of the nature of the offense he was called upon to defend. See the case of Crossett v. State, 96 Okl.Cr. 209, 252 P.2d 150.

■ It is next assigned that the punishment of five years is excessive. We do not think it is excessive. A man who deliberately destroys property by fire is an enemy to society. Conditions require that insurance be available to most people. Insurance premiums are based on the hazard, including those of an incendiary nature. The burden is cast upon the innocent and is reflected in the premium paid for insurance. The crime is against society and property. Every effort possible should be made by the duly constituted authorities to detect and punish those who commit this crime. Insurance carriers owe a duty to their honest premium-paying customers to see that those who deliberately or by negligence cause their property to burn in order to collect insurance are disappointed with the result. The punishment is not excessive.

■ Plaintiff in error next contends that the evidence is not sufficient to support the verdict. On this point it is asserted that there is a failure of proof as to motive. While the inventory, including a large amount of obsolete parts, exceeds the amount of insurance carried, it is evident from the record that it could not have been sold at a fair voluntary sale for the amount of the insurance. This is a question of fact for the jury to determine from all the facts and circumstances in the case and will not be disturbed on appeal. See Tucker v. State, 89 Okl.Cr. 30, 204 P.2d 540.

"Error of the Court in Giving Instructions" is next assigned. We have care-

fully examined the instructions of the Court in this case, and find them to be fair and adequate.

■■ Next it is assigned that there is insufficient evidence to corroborate the testimony of the accomplices. This point was fully covered by the instructions of the trial court. The jury heard the evidence. The proof on this point is mostly circumstantial. We feel that by taking the entire record there is sufficient corroboration of the testimony of the accomplices.

Lastly, plaintiff in error assigns that the Court erred in permitting the County Attorney to ask irrelevant, immaterial and highly prejudicial questions of defendant and in requiring him to answer same. This error was objected to at the time and an exception saved. It was assigned in motion for new trial and in the petition in error, and it has been briefed. It is our duty to pass on the assigned error.

Upon cross-examination of the accused, the following transpired:

"Q. Did you ever have any cars to to burn? A. I never did, I never had one to burn, one off of the used car lot, somebody burned it.

"Q. Do you know who burned it? A. No, I do not.

"Q. You did not know that Zuke Brown burned it? A. No, sir.

"Q. Did you recover the insurance on it? A. Yes, sir, the finance company did.

"Q. And it got you off the hook, didn't it?

"By Mr. Hart, of Counsel for Defendant: We object to that as incompetent, irrelevant and immaterial, and not proper cross examination.

"By the Court: What is the purpose, Mr. County Attorney?

"By Mr. Pullen, of Counsel for Defendant: They read the evidence to the jury here, if the Court please, this is improper evidence. Each tub stands on its own bottom, Your Honor.

"By Mr. Burger, County Attorney: If the Court please, it goes to his credibility, all these fires on property be-

longing to J. B. Wright, we think it is a matter of testing his credibility.

· "By the Court: Overruled. ·

"By Mr. Pullen, of Counsel for Defendant: Exception.

"By Mr. Burger, County Attorney:

"Q. You were on the paper sold to the finance company, were you not? A. That is right, on all paper that sells.

"Q. What kind of an automobile was this that burned? A. A Plymouth.

"Q. After the car burned, and the insurance company paid the amount of the policy, that took you off the hook for that amount? A. Well, I think it lacked about $50.00.

"Q. With the finance company that took you off the hook, didn't it, for that amount? A. Yes, sir, for that amount.

"Q. Have you had any other fires? A. No, sir, not that I have had, you are talking about that I have had, I have not.

"Q. Did you have a fire to burn up a 1947 Buick? A. No, I did not, in 1947 there was a Buick burned.

"Q. There was in 1947 a Buick burned? A. Yes, sir.

"Who was on that paper to the finance company?

"By Mr. Pullen, of Counsel for Defendant: We object to that as incompetent, irrelevant and immaterial, that is not before the Court, and he is bringing in something that is not mentioned in the Information, and not heretofore testified about.

"By the Court: This is cross examination, overruled.

"By Mr. Burger, County Attorney:

"Q. Were you on the paper, on that 1947 Buick that burned? A. Yes, sir.

"Q. And the same token that it burned the insurance company paid the insurance money to the finance company and it took you off the hook for that amount too? A. It lacked a little.

. . "Q. That is what you refer to in the used car business as turkeys, wasn't it? A. Oh, no.

"Q. Were they good cars? A. I don't know.

"Q. Wasn't the Buick a good car? A. The Buick, I don't know anything about that car, all I know, they burned.

"By Mr. Pullen, of Counsel for Defendant: Comes now the defendant and moves the Court to exclude all the testimony in reference to cars being burned, or that were burned, as the same is incompetent, irrelevant and immaterial and has nothing to do with the case now on trial before this jury.

"By the Court: Overruled.

"By Mr. Pullen, of Counsel for Defendant: Exception.

"By Mr. Burger, County Attorney:

"Q. You were a school teacher before you went into the used car business? A. Yes, sir.

"Q. You taught school at Dougherty? A. Yes, sir.

"Q. Did you have a fire down there, did your teacherage burn? A. No, sir.

"Q. Have you ever had a teacherage to burn? A. No, sir, and I never had a whiskey case.

"By Mr. Pullen, of Counsel for Defendant: We object to that as incompetent, irrelevant and immaterial, and highly prejudicial and comes now the defendant and moves the Court to declare this as a mistrial on the grounds this is so highly prejudicial, and inflames the minds of the jury, and it would be impossible for this defendant to have a fair trial.

"By the Court: Overruled.

"By Mr. Pullen, of Counsel for Defendant: Exception.

"By Mr. Burger, County Attorney:

"Q. Did you have the contents to burn in the teacherage? A. No, sir.

"Q. You never did have your furniture and stuff to burn in that house down at Dougherty? A. No, sir.

"Q. Are you sure about that? A. Yes, sir, I am positive about that."

Now the accused was charge with burning a building at 120 North Chickasaw, Pauls Valley, Oklahoma, on the 10th day of March, 1954. Having taken the witness stand in his own behalf, it was proper to ascertain if he had been convicted of a crime; but to ask about other acts not connected with the charged crime is improper and highly prejudicial.

The asking of questions which clearly have for their purpose the intimation of something that is either not true, or not capable of being proven if true is prejudicial. See Neely v. State, 60 Okl.Cr. 99, 61 P.2d 741.

It is fundamental that the character of the defendant cannot be impeached or attacked unless he puts his character in issue by introducing evidence of good character. Edwards v. State, 90 Okl.Cr. 211, 212 P.2d 150; Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451.

In Maiden v. State, Okl.Cr., 273 P.2d 774, 775, this court held:

"1. The general rule is that evidence which in any manner shows or tends to show that accused has committed an offense other than that for which he is on trial and wholly independent thereof, even though an offense of the same sort, is inadmissible, since accused must be convicted, if at all, by evidence which shows him to be guilty of the offense charged.

"2. Under exception to general rule that accused must be convicted, if at all, by evidence showing him to be guilty of the offense charged, evidence of other offenses recently committed by accused, similar to the offense charged, is admissible when such evidence tends to establish a common scheme or plan, embracing the commission of two or more offenses so related to each other that proof of one tends to establish the other, or when such evidence shows, or tends to show guilty knowledge or intent in the commission of the offense charged.

"3. Before evidence of other offenses may be admitted against the accused to show a common scheme or plan or intent, such other alleged offenses must not be remote as to time and there must be a visible connection between such other alleged offenses and the charge alleged against the accused in the information.

"4. The fact that one person may commit similar crimes does not justify the admission of the other offenses if they are independent of each other. Where the trial court cannot clearly see a visible connection between the alleged other offenses to the one charged he should refuse to admit the other offenses in evidence. If the trial court is uncertain as to the admissibility of such evidence, he should give the benefit of such doubt to the defendant, as it is manifestly unfair to the accused to force him to prepare to defend himself against any collateral crime other than the one charged against him in the information."

See also Bunn v. State, 85 Okl.Cr. 14, 184 P.2d 621; Harris v. State, 88 Okl.Cr. 422, 204 P.2d 305, 8 A.L.R.2d 1006.

It is the duty of this court to set and maintain a standard for the prosecution of accused persons. Even though the accused is guilty, he is still entitled to a fair trial. When the entire record is read and considered together, it is evident to us that the insinuations and intimations contained in the examination hereinabove quoted were improper and highly prejudicial and deprived the defendant of that fundamental right to a fair trial which is guaranteed by our Constitution.

It is therefore ordered that the judgment and sentence of the District Court of Garvin County is reversed and the case is remanded for the purpose of again trying the defendant.

JONES, P. J., and BRETT, J., concur.

POWELL, J., having certified his disqualification to the Governor, the Honorable REUEL W. LITTLE, of Madill, was appointed as a special judge to sit in the place of Judge POWELL.