FRED SMITH et al. v. STATE.

No. A-9491.　July 7, 1939.

(92 P. 2d 582.)

Frank Leslie, of Tulsa, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiffs in error, hereinafter to be called the defendants, Fred Smith and Bernice Mosier, were tried and convicted upon information in substance charging that in Tulsa county, on the 9th day of October, 1937, they did forcibly, conjointly, and feloniously take, steal, and carry away from the immediate presence and person of one Monte Bridges one black billfold, containing $42, being the property of Monte Bridges, said taking being accomplished by said defendants by means of force and fear, in that the said defendants did then and there conjointly and feloniously threaten to do said Monte Bridges great bodily harm, with a certain blunt instrument, then and there had and held in the hands of said defendants, all with the felonious intent on the part of said defendants, and each of them to deprive the owner of the property aforesaid permanently and to convert the same to their own use and benefit.

The jury by their verdict found the defendants "guilty of having committed the crime of conjoint robbery as charged in the information herein and fix their punishment at imprisonment in the state penitentiary for the term of ten years."

Motion for new trial was duly filed and overruled on November 29, 1937; thereupon the court rendered judgment and sentenced each defendant in conformity to the verdict. From the judgment they appealed by filing in this court, on April 14, 1938, petition in error with case-made.

The principal ground urged for a reversal of the judgment is that the verdict is contrary to law and is not supported by sufficient evidence.

The testimony in the case was substantially as follows:

Monte Bridges, the complaining witness, testified he lives at Sapulpa; that he came from Ponca City to Tulsa the night he lost his money, and went to a restaurant at First and Main, called for a sandwich and beer and saw this man and woman in there (indicating the defendants); that he said he had to go to Carbondale and would have to catch a taxi. They asked how much it would cost, and he said 40 cents, and they said "We will take you out there." He said, "That will suit me, let's go," and he got in a car; the lady sat between them. When they got to Redfork, the man stopped the car, got out, and came around to his side and opened the door, jerked him out and hit him; they ran around the car, the man struck him and grabbed his billfold from his hip pocket and ran to the car and drove away; that he had $42 in the billfold; that he did not know what the man hit him with; that he did not consent for them to take his money; that the woman did not get out of the car; that he telephoned the police station; when the police came he went back to the restaurant on East First street with them. After the policeman talked to the people there, they went across the street and upstairs and found the man and woman there in a room.

On cross-examination he stated that he might have been half drunk; that for the past week he has been in jail down at Sapulpa for being drunk; that when he inquired about going to Carbondale, the man told him he would take him; that the lady did not say she would take him any place.

F. H. Blackstone testified that his home is in West-plains, Mo., but he was in Tulsa on October 9, 1937, and was stopping at Mrs. Bernice Mosier's rooming house; that the two defendants asked him for the use of his car that evening. Smith said he was going out to see a man and borrow some money, and would be gone about 30 minutes. It was then about 7:30. It was about 2 or 2:30 in the morning when they came back. Smith came back to his room, woke him up and told him to come to the front room. Smith had a billfold in his hand at the time and he noticed a five-

and a ten-dollar bill and some ones in it. About that time the police knocked at the door; Smith opened the door; that he saw the billfold a few minutes before the police came in.

On cross-examination, asked if he did not go to the county jail not less than 15 times, and each time told Mrs. Mosier if she didn't give him his clothes he was going to convict her? Answered: "I think I was at the county jail three times." Asked, if he told Mrs. Sanders, Mrs. Mosier's sister, that if he got his clothes he would leave the city, answered: "No, sir." Asked: "Didn't you go to Westplains, Mo., thinking you would get ten cents a mile to testify?" Answered, "Yes, and I told the gentleman before I went I was going."

C. E. Tucker testified that he was a member of the police force; that in a conversation with Monte Bridges, the complaining witness, that night he said that he had been slugged, hi-jacked and robbed, and he went with him to the restaurant, then they told him where the defendants stayed and with officer Selby he went over there, knocked on the door, and nobody seemed to answer for 4 or 5 minutes, then he threatened to kick in the door if they did not open it; when they opened the door the complaining witness identified the defendants, saying there is the man that robbed me and there is the woman; that they searched the defendant Smith and found a billfold on him and 20 or 30 cents; there was no money in the billfold; they then put him in the scout car and took him to the police station.

A. L. Selby testified that he was a police officer and went with Officer Tucker to answer a call to Redfork that night. They talked to Monte Bridges and went with him to Lee's Cafe, 5 East First street. There they were told where to find the people Bridges drove off with. They went across the street and upstairs, knocked at the door, some one said, "Just a minute." Officer Tucker told them to open the door or he would kick it in. When they went in Bridges said, "That is the man," pointing to defendant Smith, and

pointed to the woman and said, "There is the lady." At the police station Smith said he wanted to go back to his room to change his clothes, so they went to his room with him; he had a billfold in his shirt pocket; when they returned to the station he asked Smith for the billfold, but it was gone.

The state's evidence was here concluded. The defendants thereupon interposed a demurrer to the evidence, which was overruled. Exceptions.

On behalf of the defendants, Laura Hubbard testified that she lives at 110 South Denver, and had lived in Tulsa about 25 years, having known Mrs. Bernice Mosier for more than 20 years, and knew Fred Smith; that they came to her home on the night of October 8th, at 11:30 or a quarter to 12 o'clock, and left her home about 1 o'clock.

Margie Sanders testified that Mrs. Bernice Mosier was her sister; that on October 8th, this year, she went to the Strand Theater, leaving there between 8 and 8:30, and as she was coming out she met her sister and Smith going into the show; that she knows F. H. Blackstone and talked to him about this case at her sister's rooming house, and he said to her: "If my sister, Mrs. Mosier, did not give him his clothes he was going to see they got stuck, but if he could get his clothes he would go to Missouri and would not testify."

W. H. Bradley testified that he had lived in Tulsa since 1920, has known the defendant, Mrs. Mosier, for about 10 years and knows the witness Frank Blackstone, having recently met him at Mrs. Mosier's rooming house. That Blackstone remarked that he owed Mrs. Mosier, and if she did not cancel the debt, he was going to stick her as deep as he could; that he was present one time when Mrs. Mosier loaned Blackstone $30.

On cross-examination he stated that he took charge of her rooming house following Mrs. Mosier's arrest.

Bernice Mosier, as a witness in her own behalf, testified that she lives at 18½ East First street; that she has known Fred Smith about three weeks; that he was a roomer at her place and went with him to the Strand Theater, about 8:30, and as they went in they met her sister coming out; left the show about 11 o'clock; it was raining and she stood in the entrance in front of Brandon's place while Smith went and got the Blackstone car, and came back and picked her up, then they drove out to Laura Hubbard's place; that Blackstone owed her one week room rent and $30 besides that he borrowed from her to pay on the car. That they left Mrs. Hubbard's after one o'clock. Smith was drinking a little and talked about the restaurant man on First street who had taken some money from him, and they went to Lee's Cafe on East First street; there Smith had an argument with the proprietor, claiming that he had left $40 there, and asked them to give it back to him; they refused; they then went to her place; about ten minutes later the officers came while they were talking to Blackstone in the reception room; that Smith carried his pocketbook in his shirt pocket. Handed a billfold, marked defendant's Exhibit "1", she stated that it was the pocketbook she saw in his pocket that night. That she never had any agreement with the man that was with the officers at her place that night, and denied having offered to take him out to Carbondale; that she did not see Fred Smith rob him; that if he lost any money that night, somebody else got it.

On cross-examination, she admitted that she had been convicted on a whisky charge in the federal court in Kansas City, Kan., and was sentenced to serve a year and a day.

The defendant Fred Smith did not testify.

No rule of law is more well settled in this state than that if there is competent evidence to support a conviction, this court will not weigh the sufficiency of the evidence to support the verdict. The converse rule is equally well

settled, that if the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that the defendant is guilty of the offense charged, it is not only the right, but the duty, of the trial court to advise the jury to return a verdict of acquittal. At the close of the trial, it is the exclusive province of the court to determine whether or not there is any substantial evidence which would authorize the submission of such an issue of fact to the jury.

Upon a careful examination of the entire record, the conclusion of the court is that the defendant Fred Smith was justly tried and properly convicted; that the evidence is amply sufficient to support the verdict and judgment of conviction as against him. And the conclusion is reached that, as a matter of law, the evidence is insufficient to warrant the conviction of the defendant Bernice Mosier, and that the trial court erred in overruling the motion on the part of this defendant for a directed verdict of acquittal.

Under the foregoing statement of the state's evidence, it is apparent that there is no evidence which tended to prove any element of guilt against the defendant Bernice Mosier, except that she was present and riding with the defendant Fred Smith at the time he stopped the car and assaulted Bridges. The evidence on the part of the state shows that the robbery was committed by the defendant Smith. There is nothing in the testimony of the complaining witness to show that Mrs. Mosier in any way actively aided, abetted or encouraged Smith in the commission of the robbery charged.

It will be noted that there is no evidence tending to show that the defendants were acting in concert with a common purpose and intent in the crime charged.

Mere acquiescence is not sufficient to establish guilt. It must be shown either that the defendant committed the

offense, or that he aided, abetted, or assisted in its commission, or that he procured it to be done.

In the case of Moore v. State, 4 Okla. Cr. 212, 111 P. 822, 824, it is said that:

"To constitute one a party to a crime * * * it is necessary that such person be concerned in the commission of the offense—that is, that he either commit it or aid or abet its commission—and it is not sufficient that he merely acquiesce therein. Consenting and acquiescing are mere mental acts, which, unless communicated to the perpetrator of the offense, in no manner aid or abet him in its perpetration. To be concerned in the commission of crime, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. But a mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel, and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime."

And see Polk v. State, 26 Okla. Cr. 283, 224 P. 194; Carrico v. State, 16 Okla. Cr. 118, 180 P. 870.

The last expression of this court is found in the case of Olin Anderson v. State, 66 Okla. Cr. 291, 91 P. 2d 794, wherein this court held under our Code of Criminal Procedure, sec. 1808, O.S.A., title 21, § 172, that under this section, "to be concerned in the commission of crime as a principal, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. A mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime." Citing the previous cases herein and also many authorities from other jurisdictions to a like effect.

It follows from the foregoing that at most the testi-

mony on the part of the state tends to create only a suspicion of guilt, and does not constitute sufficient proof of the material ingredients of the offense charged to establish the guilt of the defendant Bernice Mosier beyond a reasonable doubt.

For the reasons stated, the judgment of conviction of the defendant Fred Smith is affirmed. And the conviction of the defendant Bernice Mosier is for the reasons stated reversed, with direction to dismiss.

It appears from the record that the defendants are incarcerated in the penitentiary for failure to give appeal bonds. It is, therefore, ordered, that the clerk of this court forthwith forward to Jess F. Dunn, warden of the penitentiary at McAlester, a duly certified copy of this opinion, and upon receipt of the same, said warden is directed to discharge the defendant Bernice Mosier.

BAREFOOT and DAVENPORT, JJ., concur.