GLEN PATTERSON v. STATE.

No. A-10260.     March 15, 1944.

(147 P. 2d 179.)

Robert Burns and Mathers & Mathers, all of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Jim Ted Robinson, Co. Atty., of Sayre, for defendant in error.

246

BAREFOOT, J. Defendant, Glen Patterson, was charged in the district court of Beckham county with the crime of robbery, was tried, convicted and sentenced to serve a term of eight years in the penitentiary, and has appealed.

The information filed in this case charged the defendant and his codefendant, Charley Patterson, with the crime of robbery in the following language:

"That one Charley Patterson and Glen Patterson late of the county aforesaid, on or about the 8th day of August, 1941, in the county of Beckham, state of Oklahoma, did then and there unlawfully, knowingly, wilfully, wrongfully and feloniously make an assault in and upon one Melvin Jones with a certain weapon, to-wit: a revolver, then and there and thereby putting the said Melvin Jones in fear of an immediate and unlawful injury to his life and person by threatening to shoot the said Melvin Jones if he resisted and did then and there under and by means of the use of said force and putting in fear, tie the said Melvin Jones and chloroform him, and did then and there unlawfully, wilfully, wrongfully and feloniously, against the will of him, the said Melvin Jones, take, steal and carry away from the custody and possession of the said Melvin Jones the sum of eleven dollars in lawful United States currency which was the property of the Story Hotel and did further take, steal and carry away seven pieces of luggage containing valuable jewelry of the value in excess of $10,000, being owned by the Samuel Gordon Jewelry Company, the same being under the personal custody of Mr. George Sutter, who had checked said luggage in at the Story Hotel and left the same in the care, custody and possession of the said Melvin Jones and that the said Charley Patterson and Glen Patterson did take the above personal property with the unlawful, wrongful and felonious intent then and there on the part of them, the said Charley Patterson and Glen Patterson, to rob and deprive the said lawful owners of the said property and to convert the same to their own use and benefit," etc.

A severance was demanded and defendant was separately tried, and was convicted, as above stated.

Counsel who briefed this case in behalf of the defendant did not participate in the trial thereof.

For a reversal of the case, it is contended:

"First, the court erred in overruling the request of the defendant to advise the jury to return a verdict of not guilty in this case because the evidence wholly failed to establish the crime of robbery, as charged in the information.

"Second: There is a vital variance between the evidence and the allegations contained in the information, the verdict of the jury and the judgment and sentence of the court."

These contentions may be considered together.

It first becomes necessary to make a brief statement of the facts. The defendant was the son of his codefendant, Charley Patterson. Both were residents of Oklahoma City, Oklahoma county, Oklahoma. The only evidence was that presented by the state. The defendant did not testify, and did not introduce any evidence.

George Sutter, a resident of Anadarko, Caddo county, Oklahoma, was a jewelry salesman for the Samuel Gordon Jewelry Company, a wholesale jewelry concern. He went to Elk City in Beckham county, on August 7, 1941. and stayed at the Story Hotel, in that city. He carried with him seven cases containing samples of jewelry, diamonds, watches, etc. Five of the cases were steel with Yale locks, while two of them were leather cases, with leather straps around them, and Yale locks on the buckles. These cases were checked to Melvin Jones, the night clerk of the Story Hotel, and were placed by him behind the desk of the clerk, and in behind a telephone switchboard, under the stairway.

When Mr. Sutter retired for the night, around 11 or 11:30, these cases were in their proper place. He was awakened during the night, and went into the lobby of the hotel, and there was much excitement and he looked for the cases, and all of them were gone. The next day he saw and identified his cases. They were at the police station in Elk City, in a black car that had fender wells, four of the cases in the back seat and three in the tonneau. He identified each of the bags and testified they were taken without his knowledge or consent, and that the value of the property in the cases was in excess of $10,000. None of the cases had been opened. Mr. Sutter identified the defendant as being one of the two parties whom the officers had arrested and who was present at the police station in Elk City at the time he identified his cases.

Mack Robinson testified for the state. He was a member of the police department at Elk City. He was on the night shift, and worked from 6 o'clock in the evening until 6 in the morning. He testified that just after midnight on the morning of August 8, 1941, he was at the Rock Island Cafe, on Main street. That about 3 a. m. he came out of the cafe, and "started north and I saw two men come from the Story Hotel and get into a car and went north." He went to the front of the Story Hotel and attempted to go in, and the door was locked. He went to a telephone and called the hotel, but got no response. He finally got the sister of the owner and manager of the hotel, Mr. Ed Story; and he came and opened the front door. Soon after the door was opened a number of persons came in, and upon investigation the night clerk, Melvin Jones, was found in the rest room, where he was bound and gagged, and tied to the stool. His feet were tied together and tied to the stool, his hands were tied behind him, and his face and mouth were taped with four-

inch adhesive tape. After his release he was unable to talk for some time, and prior to this trial he had died, but not by reason of any injury he received on the night of August 7th. This witness could not identify the defendant as being one of the parties whom he saw leave the hotel, for the reason that he was not close enough to him. He described the car as being a black car with fender wells, and that he saw the first two numbers of the tag—1—4—. He said "the exhaust was altogether different from what a car of that type would be. It sounded to me like a part of the muffler was busted or the exhaust was loose at the muffler." He examined the car at the police station the following day, and the one in which the defendant and his codefendant were at the time of their arrest, and stated that it was the same car he saw back out from the Story Hotel the night before, and go north.

Mr. Ed Story testified to being the owner and manager of the Story Hotel. He described the building and testified to seeing Mr. Sutter when he went through the hotel to go to his room. Also to getting up at night and opening the door and of the officers finding the night clerk, Melvin Jones, bound, as above described. He testified to other details with reference to checking baggage, etc., which it is unnecessary to relate.

Mr. O. C. Thornton testified that he owned a wholesale gasoline station in Elk City on the 7th and 8th of August, 1941. He recalled being at his place of business after midnight on August 7th. He testified that he saw "a black, '38 Buick sedan came from the south to my station, came right up that street and went out on 66." He was standing out beside the gasoline pump at the time. He described the car as being a black sedan and that it had well fenders and a trailer hitch on the back. He also testified that there was a drain ditch near his station and

this car drove through the mud at the time it passed. There were two men in the car, but he could not identify the defendant as being one of them. The car turned east on Highway 66. He testified that by reason of the action of the parties in the car, and his thought that they intended to hold up his station, he immediately called the police station, and told Mr. Jones, the night chief, about the car. Mr. Jones came to his station immediately, and they drove out east on Highway 66 to Canute, but did not catch up with the car, and turned around and returned to Elk City. On the following day he went with the officers to El Reno, and there saw a "black Buick '38 sedan, with well fenders." He identified it as the same car he had seen pass his station the night before. It had the number 1-4—but he did not remember the balance of the number. He also testified that, "it seemed to me it had an exhaust or muffler or something cracked on it, it was loose or something," and that the mud on the car was of the same color and kind as that in the ditch near his station. The car he saw in El Reno had the same "round ball or knob trailer-hitch." He identified the defendant as being one of the parties sitting in the car at the time he saw it in El Reno.

Mr. O. C. Jones, the night chief of police at Elk City, testified to being called by Mr. Thornton. He himself had just noticed the automobile. He immediately went to Mr. Thornton's station, and they followed the car out of town, but returned to Elk City, and went to the Story Hotel, where he assisted in releasing Mr. Melvin Jones. He identified the rope and tape which was introduced in evidence as that taken from the body of Melvin Jones. He went to El Reno, in Canadian county, which is east of Elk City on Highway 66, the next morning and there at the police station found the black Buick '38 sedan, as testified by

Mr. Thornton. The defendant was identified as one of the parties in the car, and he saw the seven bags in the automobile. They were the same bags later identified by Mr. Sutter as his bags that were taken from the Story Hotel. He brought the defendant and his codefendant to Sayre, in Beckham county, where they were placed in jail.

Gene Barnes testified that he was a member of the State Highway Patrol. That he was stationed at Elk City, and on the night of August 7, 1941, or early morning of the 8th, he was at the Story Hotel and that he called the State Highway Headquarters at Bethany and gave them a description of the automobile and contents which had left Elk City. He later received a call informing him that parties had been arrested and were being held at El Reno. He went with the Elk City officers to that point, and his evidence was the same as the others with reference to finding the automobile, the contents, and the defendant.

J. H. Blackard testified that he was a member of the State Highway Patrol, and on August 8, 1941, he was living at Edmond but working around Oklahoma City. He worked from midnight until 9 o'clock in the morning. He recalled receiving a broadcast from headquarters to all patrolmen in that part of the state, about 4:30 a. m. He was about ten miles northwest of Oklahoma City, and immediately went to Yukon, on Highway 66, to notify the officers there. He then went west, and near Banner received information over his radio that the car he was looking for had passed through El Reno, going east on Highway 66. He and his companion officer stopped and turned their searchlights on the highway, and the second car that came along was the one they were looking for. There were two men in it, some large objects in the back seat, and the number was 1-4—. "We laid the red light on and started the siren and they pulled off to the side of the

road." The elderly one of the two, who said his name was Charley Patterson, got out of the car. The other party in the automobile was this defendant. The officers searched both parties and found a 45-calibre pistol fully loaded lying on the floor boards in the front part of the automobile. Four cases were found in the back seat, and three in the trunk. These cases were later identified by Mr. Sutter in Elk City, and were turned over to him, and a receipt taken therefor. The cases were introduced in evidence. The men and the automobile and the cases were taken to El Reno, and turned over to the Elk City officers.

Mr. W. R. Livingston testified that he was a highway patrolman, and in August, 1941, was working with J. H. Blackard. His evidence was identical with that of Patrolman Blackard.

Ernie Eason testified that he carried the mail from Altus to Elk City. That on August 7, 1941, he left Altus about 10:30 p. m., and arrived at Elk City about 1 a. m. He usually remained there until about 3:10 or 3:15. That on the morning of August 8, 1941, he was in the Rock Island Cafe, in Elk City, about half a block from the Story Hotel. About ten minutes before three he left the cafe and started to the post office. He testified, "I saw one car come down Main street and go on down to just south of the Story Hotel and park at the curb, and two men got out of the car and went into the Story Hotel." He further testified that the car was a black Buick '38 model sedan, and that it had two spare tires, one in each fender well. He went from the post office to the Casa Grande Hotel and then to the Rock Island Cafe for the purpose of picking up two passengers. He saw two men come out of the Story Hotel, enter the Buick car, back it out from the curb and drive off, going north. In a short while he went by the

Story Hotel and stopped, and was there and assisted in cutting the rope and releasing Melvin Jones.

Ed Story upon being recalled testified to the front doors being locked with a Yale bolt and that you could lock them by pulling them shut. He also testified to the arrangement of the Hotel.

These were all of the witnesses who testified for the state, and the defendant did not testify and offered no evidence.

The defendant requested four instructions, as follows:

"1. The defendant above respectfully requests the court to require the jury to assess the punishment, in the event they convict the defendant.

"2. The defendant requests the court to charge the jury on robbery in the second degree.

"3. The defendant moves the court to advise the jury to return a verdict of not guilty in this case.

"4. The defendant moves the court to dismiss the charge of robbery with firearms and not submit that issue to the jury."

The court granted the second and fourth requests and so instructed the jury. No exceptions were taken to any of the instructions given by the court. The court instructed the jury as to the definition of robbery, as set out in the statute, Tit. 21 O. S. A. § 791, as follows:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

He also instructed the jury as to robbery in the first degree, and as to conjoint robbery. The jury returned a verdict as follows:

"We, the jury impaneled and sworn to try the issues in the above entitled cause, do, upon our oaths find the defendant Glen Patterson, guilty of conjoint robbery, as charged in the information, and fix his punishment at imprisonment in the State Penitentiary for a term of 8 years."

It is contended that because no one testified positively that a gun was used at the time of the robbery, the evidence was insufficient to sustain the verdict and judgment, by reason of the allegations in the information.

While the evidence against this defendant is largely circumstantial, we have often held that one may be convicted upon circumstantial as well as direct and positive testimony.

The evidence in this case is such that it precludes every doubt but that the defendant and his codefendant were the parties who bound and gagged Melvin Jones, the night clerk of the Story Hotel; and that they were the parties who robbed him of the seven cases containing the diamonds and watches, etc., checked by the witness Sutter. Prior to the trial Melvin Jones had died and the state was deprived of his testimony, yet every circumstance conclusively establishes the fact that defendant and his father, his codefendant, were the guilty parties. It is true that no witness was able to testify that he saw them in the very act of binding and gagging the night clerk and displaying the pistol at the time of the robbery; yet two men were seen entering the hotel; two men were seen to emerge from the hotel; two men were seen just after they left the hotel; the car in which they were driving was identified beyond question by a number of witnesses; two men, who were these identical defendants, were arrested in this identical automobile. The property taken at the hotel was in the automobile, and in their possession. They had just had time to drive from the scene of the robbery to the place

where they were arrested. It was upon the identical highway they were seen traveling just after the robbery; they were going directly toward the city where they lived. The 45-calibre pistol fully loaded was found upon the floor boards in the front part of the car. Certainly under this state of facts, the jury were justified in finding that the defendant was one of the parties who committed this crime, and to infer from this evidence that they used the gun or had it at the time they committed this crime. However, to commit the crime of robbery in the first degree, it is not essential that one use a firearm, and the court at the request of the defendant instructed the jury that the evidence did not show that the robbery had been committed with firearms, and this issue was eliminated from the consideration of the jury at the request of the defendant. He cannot at this time complain of this action.

Defendant in his brief relies upon the case of Smith v. State, 66 Okla. Cr. 408, 92 P. 2d 582, in which this rule of law is announced:

"Mere acquiescence in the commission of a crime by another is insufficient to establish guilt, since it must be shown either that the defendant committed the offense, or aided, abetted, or assisted in its commission. * * *

"To constitute one a party to a crime, it is necessary that such person be concerned in its commission, and it is not sufficient that he merely acquiesces therein with knowledge that another is committing the offense."

From the statement of the evidence hereinbefore made, it will be seen that this rule of law has no application to the facts in the instant case. The circumstantial evidence of the participation of the defendant in this crime precludes its application. The same is true as to the case of Miller v. State, 57 Okla. Cr. 99, 45 P. 2d 769, cited by the defendant. The defendant did not take the witness

stand or offer any explanation of his presence at the time the crime was committed.

The contention of defendant that there was a vital variance between the evidence and the allegations of the information and the verdict of the jury and judgment and sentence, cannot be sustained. In the first place, this question was not raised in the motion for new trial, nor in the petition in error. It is raised in the brief filed in behalf of defendant for the first time. An examination of the information reveals that it charged the defendant with the use of firearms, but clearly covered the offense of conjoint robbery. The court at the request of defendant eliminated the question of robbery with firearms, and submitted to the jury only the question of robbery in the first degree and conjoint robbery. There was no exception or objection to the verdict of the jury finding the defendant guilty of conjoint robbery.

Conjoint robbery is defined by Oklahoma Statutes, Tit. 21 O. S. A. 1941 § 800, as follows:

"Whenever two or more persons conjointly commit a robbery or where the whole number of persons conjointly commits a robbery and persons present and aiding such robbery amount to two or more, each and either of such persons is punishable by imprisonment in the penitentiary for not less than five years nor more than fifty years."

Section 801 defines robbery or attempted robbery with firearms or with a dangerous weapon, and fixes the punishment. It has often been decided that the above statutes defining conjoint robbery and robbery or attempted robbery with firearms or a dangerous weapon, are statutes of classification, and not definitions. Simpson v. State, 40 Okla. Cr. 58, 266 P. 783; Inman v. State, 61 Okla. Cr. 73, 65 P. 2d 1228; Woods v. State, 68 Okla. Cr. 406, 99 P. 2d 189; Smith v. State, 69 Okla. Cr. 17, 99 P. 2d 527.

The statute defining robbery is Tit. 21 O. S. A. 1941 § 791, as above quoted. Conjoint robbery is where the act is committed by two or more persons. In conjoint robbery the punishment may be by imprisonment in the penitentiary for not less than five or more than 50 years, and for robbery with firearms it may be by death, or imprisonment at hard labor, in the State Penitentiary for a period of time not less than five years, at the discretion of the jury trying the case.

The judgment and sentence entered followed the charge in the information, and used the words "robbery with firearms," and did not use the term "conjoint robbery," as was found in the verdict of the jury. This was a mere typographical error. The defendant was not deceived and the punishment inflicted was a proper and legal punishment for the crime of which the defendant was convicted. It was in accordance with the verdict of the jury, and the instructions of the court, in the event defendant was found guilty. Even if the judgment and sentence were defective as contended by defendant, it could only result in a return to the trial court for correction, which we consider unnecessary, in view of the facts in this case. The sentence pronounced is not a void or illegal one, and the defendant would be able to plead former jeopardy against any attempted prosecution of this case. The appeal bond filed herein states that the defendant was convicted and sentenced for the crime of conjoint robbery. Winfield v. State, 18 Okla. Cr. 257, 191 P. 609; Richards v. State, 22 Okla. Cr. 199, 210 P. 295.

Finding no error, the judgment and sentence of the district court of Beckham county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.