Vernon R. GUTHREY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13119.

Court of Criminal Appeals of Oklahoma.

Sept. 12, 1962.

Jack H. Coleman, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Vernon R. Guthrey, plaintiff in error, defendant below, from a conviction for grand larceny. He was charged by information in the district court of Garvin County, Oklahoma with the larceny of a doctor's medicine bag from one Dr. Ryan's parked automobile, the bag and contents being of the aggregate value of $185. The bag contained, among other things, blood pressure-taking instruments, a stethoscope, and drugs, such as demarol, morphine tablets, a vial of laxative, codeine tablets, hypodermic needles and syringes. The crime was allegedly committed on January 5, 1961 in Lindsay, Oklahoma, in the aforesaid county. Defendant was tried by a jury, convicted and his punishment fixed at one year in the penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

It appears that the factual situation from which this prosecution arises is, briefly as follows: Dr. Ryan, a practicing physician of Lindsay, Oklahoma, parked his automobile on January 5, 1961 back of his clinic, leaving in the unlocked automobile his doctor's bag and its contents as hereinbefore substantially enumerated.

Another automobile, a Corvair, with the front end buckled, and occupied by four boys, as seen by four eyewitnesses, hurriedly entered the parking area, pulling up along side of the doctor's car. From the Corvair one of the boys jumped out, opened the doctor's car door and removed the doctor's bag, taking it with him into the back seat of the Corvair, which then hurriedly sped away.

The Corvair, with the battered front end and four boys as its occupants, was seen by a local police officer at a stop light as it was leaving town. The officer said he noticed two things—that the front end was bent up, and that it was a strange car. Shortly after he met the car he got general information on his radio about the theft, and he went to Dr. Ryan's office, got the details concerning same and picked up Buck Bell, another policeman, and they took out after the car on the highway. Thirty minutes later they spotted the boys and after a chase, getting their car up to about 80 miles an hour, and about three miles east of Alex, Oklahoma, they overtook the boys. It was the same car the officer met leaving town with four boys its occupants. During the chase, the arm of one of the boys was seen throwing something out of the car. When the boys were overtaken they were arrested and searched. No contraband was found on them. Their automobile was returned to Lindsay, and a vial that had contained narcotics was discovered by Dr. Ryan under the back seat of the Corvair, and the doctor identified the vial as one that came from his medical bag. A syringe

and needles and three vials of narcotics were found along the highway where it was observed one of the occupants of the Corvair threw something out of the right-hand side of the car. Dr. Ryan's medical bag was found on the highway between Bradley and Alex, and was identified by him.

These were the circumstances upon which the state relied for conviction. The defendant offered no evidence in his defense. The facts as hereinbefore related stand uncontradicted.

 The defendant raises but one proposition set forth in his motion for new trial. The other propositions raised were not presented in said motion, and are, therefore, not before us for consideration. "Only * * * questions which were raised in the trial court and an adverse ruling thereon, exceptions taken, and then incorporated in a motion for new trial, and assigned as error in the petition in error, will be considered on appeal, except that jurisdictional questions may be raised at any step of the case." Staley v. State, 97 Okl.Cr. 114, 259 P.2d 545.

The remaining proposition properly preserved and raised herein is that the evidence was insufficient to establish defendant's connection with or his guilt as a participant in the crime. He cites in support of this contention Carrico v. State, 16 Okl.Cr. 118, 180 P. 870. The evidence in that case amply supports Carrico's contention. His testimony was a clear denial of any other than mere acquiescence after he knew Moore, the other defendant, was handling whiskey. He was not in on the deal from its inception. Moreover, the testimony of Moore, the law violator, was that Carrico was not implicated in the transaction. The evidence was clearly against the conviction therein.

In Smith v. State, 66 Okl.Cr. 408, 92 P.2d 582 the evidence offered by the co-defendant Bernice Mosier was that she knew nothing about the intention of her associate to rob Blackstone, the victim, and further it was her sworn testimony that if the victim was robbed, the crime was committed by someone other than Smith. This court

therein said that Mrs. Mosier was no more than a suspect to the crime. The same is true of Anderson v. State, 66 Okl.Cr. 291, 91 P.2d 794 cited in Smith et al. v. State, supra.

 In the case at bar there is not a scintilla of evidence to support the defendant's theory of non-participation. In fact, there was no evidence at all by the defendant Guthrey. Under this record, the defendant and the other three boys started out together in concert and were in concert at the time of the larceny, and were in concert an hour later when they were apprehended. When it was apparent they were about to be overhauled they ran their automobile, in an attempt to escape, at or near 80 miles an hour, and threw the fruits of the larceny out of the car window, on the right-hand side of the road. All these circumstances standing uncontradicted are evidence of a joint operation. This proof, if believed by the jury, was sufficient, as was said in Weatherman v. State, 56 Okl. Cr. 191, 36 P.2d 306:

"Certainly it is essential that the larceny by accused must be proven, but it is not essential that this proof be by testimony of an eyewitness to the taking, for, if such were the law, generally it would be impossible for the state to supply any such proof. As a usual thing, larceny is committed at a time when the thief believes no one is watching; if he believed he were being observed, certainly he would not commit the larceny. The state, perforce, must rely on circumstantial evidence. The most common circumstance and the most convincing is to find one in the possession of recently stolen property. Such possession creates an inference of fact which, with other incriminating circumstances, is sufficient to sustain a conviction. Luther Worley v. State, 31 Okl.Cr. 253, 238 P. 225."

 In the body of the opinion in the Worley case, cited above, it was said:

"There are other circumstances which bear out the theory of the state.

The evidence of the state, if believed, and the inferences logically to be drawn from it, amply prove the guilt of the defendant. The weight of the evidence and the credibility of the witnesses is a matter within the province of the jury."

 In Rush v. State, 22 Okl.Cr. 126, 210 P. 316, it was said:

"Allowing the reasonable inferences and deductions to be drawn from the circumstances adduced against all the defendants with the exception of one, the court is of the opinion that there is evidence in the record sufficient to give the jury reasonable grounds to conclude that the defendants were guilty of the crime charged; and, in the absence of any defense interposed or explanation made of these incriminating circumstances, we think the judgment as to these defendants should be affirmed."

If the defendant was not a part of the consent he could easily have gotten out of the car at the parking lot when the car was stopped to steal the bag. He had an hour to abandon the enterprise but did nothing about it. In the absence of any evidence to the contrary, the jury was clearly within its province to find that this was a concerted or joint effort by the four boys, and all of them were guilty, including this defendant. This conclusion of the jury is the only reasonable result supported by the evidence. As was said in People v. Hornes, 168 Cal.App.2d 314, 335 P.2d 756:

"Unless the evidence of identification [and we add participation] can be strictured as inherently improbable or incredible as a matter of law, the finding of the trial court or jury cannot be disturbed and an appellate tribunal cannot substitute its judgment for that of the court below."

The evidence upon which the jury's verdict is based herein is neither improbable nor incredible. It is sufficient, in face of nothing to the contrary, to establish concerted action, and the guilt of this defendant.

If there was any believable evidence to support the defendant's theory of non-participation in this crime, a different conclusion might have been reached. Though this court is sometimes compelled by the protective feathers of the law to lie flat on its back, it never faces the embarrassment of being compelled to stand on its head in face of uncontroverted evidence from which a logical inference of guilt is the inevitable conclusion.

For these reasons, this conviction, judgment and sentence are affirmed.

NIX, P. J., and BUSSEY, J., concur.