Scotty McKEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–481.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1975.

As Corrected Jan. 14, 1975.

Larry M. Weber, Altus, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Scotty McKee, hereinafter referred to as defendant, was charged by Information filed in the District Court, Jackson County, with having committed the offense of Unlawful Distribution of Marijuana while acting in concert with Edward Ortega on or about the 18th day of April, 1973, by delivering and distributing marijuana to one Gregory Butler. (In violation of 63 O.S., § 2–401.) Upon motion a severance was granted the two defendants. Defendant McKee was found guilty by jury ver-

dict and in accordance with that verdict he was sentenced to imprisonment in the State penitentiary for a period of two (2) years and fined in the amount of Five Hundred ($500.00) dollars (Case No. CRF–73–63).

At trial the State's witness, Gregory Butler, testified that he was a bonded Deputy Sheriff in Jackson County working as an undercover narcotic agent and that on the night of April 18, 1973, he purchased a lid of marijuana from defendant and Edward Ortega in Altus, Oklahoma. Butler stated that he was in the company of an informer, Darrell McDonald, in McDonald's car which McDonald was driving, and that around 11:05 they pulled into the Sonic Drive-In and parked on the right of defendant's pickup. Ortega was sitting in the passenger seat of defendant's pickup and McDonald asked him if he had any lids for sale. Butler stated that Ortega turned and conferred with the defendant and then told McDonald that they had sold all they had except one and that they wanted to keep that one lid. Butler said that he then reached over and told Ortega that he needed a lid to take back to Lawton, Oklahoma, with him as he had no way to get marijuana in Lawton. According to Butler's testimony, Ortega then conferred with McKee again and then Ortega told Butler to name his price to which Butler replied that he would pay $12.00. Ortega then turned to McKee and turned back to Butler shaking his head no. Butler then told Ortega that he would pay $14.00 whereupon Ortega turned to McKee, back to Butler and said, "Follow us." Butler stated that they then followed Ortega and the defendant to the Kentucky Fried Chicken parking lot. He stated that he got out of the car and went over to the right side of the pickup, Ortega moved over next to McKee, and he (Butler) got in the pickup and sat on the passenger's side. Butler stated that he handed the $14.00 to Ortega who counted it and that Ortega then told McKee that all the money was there. According to Butler's testimony McKee then reached across Ortega and handed Butler the baggie of marijuana. Butler stated that McKee apparently had the baggie in his lap, that defendant reached across Ortega, handing it directly to Butler, and that Edward Ortega never handled the marijuana.

The State produced two other witnesses, Craig Spraggins and Ronald Clodfelter, who established the chain of custody of the evidence and the identity of the substance as marijuana. The defendant did not dispute either of these issues.

The defendant testified on his own behalf and denied that he had taken part in the sale negotiations as were related by Butler. He testified that Edward Ortega was a passenger in his pickup that evening and, that after the two of them drove around for awhile, they stopped at Clyde's Drive-In where McDonald and Butler pulled up beside them. The defendant stated that he was talking with some guys across the street and that he heard a conversation between Ortega and McDonald in which McDonald asked Ortega if he had marijuana for sale and Ortega replied that he did not. Defendant stated that he and Ortega then drove around for awhile and stopped at the Sonic Drive-In whereupon Butler and McDonald again pulled up beside them. Defendant testified that he did not pay much attention to the conversation between Ortega and McDonald but that he knew that the conversation concerned whether or not Ortega had marijuana. The defendant testified that before their arrival at the Sonic, Ortega had not indicated to him that he had any marijuana and that during the conversation Ortega was having with McDonald and Butler, Ortega looked at defendant and said, "They wanted to buy some pot," to which the defendant stated he replied, "I don't have any." Ortega then turned and talked to Butler and McDonald again and defendant testified that he heard McDonald talking about money and that McDonald kept raising his prices. Defendant related that Edward Ortega then said, "Okay" to McDonald and that Ortega asked the defendant to drive to Kentucky Fried Chicken which he did. Defendant related that aft-

er they parked in the Kentucky Fried Chicken parking lot Edward Ortega pulled some marijuana out from inside his pants and laid it on the seat between them. Defendant stated that this was the first time he became aware of the fact that Ortega had marijuana with him. He stated that Butler then came to the window and handed Ortega some money and Ortega handed Butler the baggie. Defendant stated that Ortega then told him to count the money, which he did, and returned the $14.00 to Ortega.

■■ On appeal the first proposition of error concerns the instruction given by the trial judge on aiding and abetting. No objection to this instruction was interposed at trial by defense counsel and this issue is therefore improperly before the Court. We have consistently held that it is the duty and privilege of defense counsel, as an officer of the court, to aid the trial judge in preventing error by offering objections to improper instructions and submitting proposed instructions to the court. Where the record is void of objections and instructions are not submitted by counsel, the issue has not been preserved for review by this Court. Kidd v. State, Okl.Cr., 462 P.2d 281 (1969).

■ In his second proposition of error, counsel argues that the trial judge should have instructed the jury on possession of marijuana as a lesser included offense. We disagree with counsel's assertion. The State's evidence presented at trial, if believed, showed defendant guilty of the crime of Unlawful Distribution of Marijuana and nothing less. The defendant's testimony, if believed, showed that he merely happened to be where the action was, without knowledge of the presence of marijuana and without control or dominion over the substance. Such evidence will not support a conviction for Possession of Marijuana. Brown v. State, Okl.Cr., 481 P.2d 475 (1971). We are of the opinion that the trial judge correctly refused defendant's requested instruction as no reasonable view of the evidence could support an instruction on Possession. See, Jennings v. State, Okl.Cr., 506 P.2d 931, 934 (1973).

■ Defendant's final assignment of error concerns remarks made by the prosecutor during closing argument. We have carefully reviewed these statements and do not find that they were prejudicial to the defendant. No objection to the statements was made by the defendant and the issue therefore was not properly preserved for appeal. This Court has long followed the rule of law as set forth in Robison v. State, Okl.Cr., 430 P.2d 814 (1967), that:

" . . . when objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the matter cannot be presented for the first time in the Motion for New Trial and in the Petition-in-Error and briefs on appeal." at 818

For the above and foregoing reasons it is our opinion that the judgment and sentence appealed from should be, and the same hereby is affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting.)

I respectfully dissent to this decision. In the first instance, I believe defendant was represented by ineffective counsel. Notwithstanding that defendant was represented by counsel of his own choosing, that representation was ineffective, which resulted in his failure to receive a fair trial. Trial counsel was discharged at the conclusion of trial and the appeal lodged by new counsel, Larry Weber.

A quick survey of the record reveals numerous instances when the prosecutor

asked leading questions suggesting answers to be received, but defense counsel objected only twice during trial, and he objected once during closing argument. Admittedly, the number of objections is not alone the criteria to indicate whether or not counsel was effective. But when the record is considered in its entirety, coupled with the fact that subsequent to trial that particular attorney was suspended from further practice of law for other reasons, plus the fact that because of trial counsel's negligence defendant was required, with another attorney, to exercise his rights under the post conviction procedures in order to obtain his appeal, all these factors considered together cause me considerable concern. While the trial might not have been a mockery, it certainly fails to meet my standards of effective representation.

Secondly, I believe the evidence is insufficient to sustain this conviction. Defendant was convicted on the testimony of one witness, Gregory Scott Butler, the undercover agent. The insufficiency of that witness' testimony results from his conjecture and uncertainty to such an extent that I cannot in good conscience place my approval on this decision. On cross-examination Mr. Butler was asked, "Did you have a very clear view of Scotty?" (defendant herein]. Mr. Butler answered, "No, sir. Not a very clear view." Nonetheless, throughout his testimony he related how Edward Ortega would confer with the defendant, who would respond by a movement of his head.[1] During direct examination Mr. Butler showed his uncertainty as to what actually happened after he got into the pickup with defendant and Ortega. The prosecutor inquired what happened after Mr. Butler got into the pickup. After Mr. Butler related how he gave Ortega the fourteen dollars he continued his testimony, "And Scotty McKee then, I—Apparently it was dark. I couldn't see, but he apparently—It was in his hand. He reached across Ortega and handed me the baggie." Mr. Butler must have suffered some sort of conscience pangs, which he overcame with the realization the conviction must be obtained at any cost to maintain his 100% record of convictions. Mr. Butler could either see what happened, or he could not see. It is from this testimony I draw the conclusion of conjecture. "Apparently" is not sufficient testimony to sustain this conviction as I view the facts. To my way of thinking this is not the type testimony which should be permitted to send a young man, twenty years of age who has no police record, to the penitentiary. I believe the defendant is entitled to receive a new trial.

Next, I believe the trial court's instruction number 4 was improper, even when considered with all the other instructions. The instruction paraphrased the statute found in 21 O.S. 1971, § 172; and as it was stated, it left the impression with the jury that notwithstanding the testimony heard the defendant aided and abetted Edward Ortega in the sale of the marijuana. That instruction recited:

> "You are instructed that under the law of this state all persons concerned in the commission of an offense, whether they directly commit the act constituting the offense, or aid, abet, or assist in its commission are equally guilty."

As I ascertain the facts, one question for the jury to determine was whether or not the defendant participated in the sale. If the jury believed that he did participate, then he was not an aider to the sale. But under this instruction the jury was left with the impression that the trial court concluded that the defendant aided in the sale and therefore he must be found guilty. In Potter v. State, 93 Okl.Cr. 352, 228 P.2d 204 (1951), this Court cited with approval the statement found in Moody v. State, 11 Okl.Cr. 471, 148 P. 1055 (1915), which was:

> "The trial court is never warranted in giving an instruction which has the ef-

---

1. After this trial Edward Ortega entered a plea of guilty to the same charge of sale of the one baggie of marihuana.

fect of determining [controverted] questions of fact."

That decision continues citing Monaghan v. State, 10 Okl.Cr. 89, 134 P. 77, 80, 46 L.R.A., N.S., 1149, as follows:

"The law requires the court, not only to abstain from positive expression as to the weight of the evidence, but to avoid even the appearance of an intimation as to the facts, and to so guard the language of its charge to the jury, which is the law of the case, that no inference, however remote or obscure, may be drawn by the jury as to the weight of the evidence."

Under the instruction given, the trial court specifically informed the jury that the defendant was an aider to the sale and therefore he was guilty.

In Smith v. State, 66 Okl.Cr. 408, 92 P. 2d 582, 585 (1939), this Court entered into considerable discussion of what is required under 21 O.S., § 172 to show aiding or abetting as follows:

"In the case of Moore v. State, 4 Okl.Cr. 212, 111 P. 822, 824, it is said that: 'To constitute one a party to a crime * * * it is necessary that such person be concerned in the commission of the offense—that is, that he either commit it or aid or abet its commission—and it is not sufficient that he merely acquiesce therein. Consenting and acquiescing are mere mental acts, which, unless communicated to the perpetrator of the offense, in no manner aid or abet him in its perpetration. To be concerned in the commission of crime, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. But a mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel, and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime.' And see Polk v. State, 26 Okl.

Cr. 283, 224 P. 194; Carrico v. State, 16 Okl.Cr. 118, 180 P. 870.

"The last expression of this court is found in the case of Olin Anderson v. State, [66 Okl.Cr. 291] 91 P.2d 794 (not yet reported [in State Reports]), wherein this court held under our Code of Criminal Procedure, Sec. 1808, Oklahoma Statutes Annotated, Title 21, Section 172, that under this section 'to be concerned in the commission of crime as a principal, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. A mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime.' Citing the previous cases herein and also many authorities from other jurisdictions to a like effect.

"It follows from the foregoing that at most the testimony on the part of the State tends to create only a suspicion of guilt, and does not constitute sufficient proof of the material ingredients of the offense charged to establish the guilt of the defendant, Bernice Mosier, beyond a reasonable doubt."

Speaking through Chief Judge Murrah, the Court of Appeals stated in King v. United States, 402 F.2d 289 (10th Cir. 1968), wherein King was charged with aiding and abetting the transportation of forged securities in interstate commerce, that Court stated the following:

"The trial court properly instructed the jury, in substance, that to be guilty of aiding and abetting by words spoken or acts done the defendant must wilfully associate himself in some way with the criminal venture by participating in it as something he wishes to bring about and by seeking to make it succeed by some action on his part. [Citations omitted]

Mere presence at the scene of the crime with knowledge that the crime is being committed will not suffice to constitute aiding and abetting unless the jury is convinced beyond a reasonable doubt that such defendant was doing something to forward the crime and that he was a participant rather than merely a knowing spectator. [Citations omitted]"

As I view the record before this Court, none of the requirements set forth in Smith v. State, supra, and King v. United States, supra, as they pertain to aiding and abetting, are present. Therefore, I repeat, I believe the court's instruction number 4, on aiding and abetting, constitutes reversible error. Had a proper instruction been given to the jury, the jury might have found the defendant not to be an aider or abettor, and the jury's verdict of conviction might have been different. Therefore, I dissent to this decision. I would reverse and remand it for a new trial.