Sammy Darrell CARICO, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13811.

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1966.

James B. Martin, McAlester, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Bill Pipkin, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

This is an appeal by Sammy Darrell Carico, from a conviction for the crime of assault and battery with intent to kill, after former convictions of felonies.

The accused was initially charged jointly in Pittsburg County, Oklahoma, with one William Eugene Eaton, as the result of an assault which occurred during the breakfast hour, in the dining hall on April 1, 1965, in the State Penitentiary at McAlester, Oklahoma. Both defendants were inmates

of the penitentiary, as was the one assaulted. A severance was granted, and William Eugene Eaton was tried first, convicted by a jury, and his appeal to this court was affirmed. Eaton v. State, Okl.Cr., 418 P.2d 710.

Subsequently this defendant was tried by a jury and found guilty of the charge. The jury assessed his punishment and sentenced him to serve not less than one year, nor more than four years in the state penitentiary.

At the outset of his brief, counsel for defendant stated: "The theory of the defendant and what we expect to prove, was that the assault committed on the said Larry Jack Horton, if one was in fact committed on the day and date as alleged in the information, was committed by the said William Eugene Eaton."

█ In this appeal defendant's first contention of error is that the court erred in overruling defendant's demurrer to the information.

During the hearing had in the district court, when defendant's "plea in abatement, motion to quash or motion to set aside", was heard, the attorney for the defendant announced that he would like to file demurrers to the informations. The record before the Court reflects, "lengthy argument was had by counsel"; after which the court announced, "The demurrers and each of them are overruled, and separate exceptions are allowed."

At the defendant's subsequent trial, the State introduced evidence to show that Larry Jack Horton, the victim of the assault, was stabbed and cut with instruments similar to knives. The prison doctor testified that he treated Horton on the date mentioned, and stated further:

"A There were eight puncture-type, rather than clean stab-type wounds. There were two in the upper left arm. There was another at the shoulder. There were three wounds in the left side of the chest and there were two other wounds in the small part of the back, on the right."

The doctor stated further, that Horton had a collapsed lung on his left side, which had to be caused by either one or all of the three stab wounds in the chest.

An instrument, otherwise described as a steel screw-driver, which had been sharpened to a fine point, was shown to the doctor. The doctor testified, "I would say that it would be an instrument that would make a wound such as Horton had."

Witness Allen Ventress, captain of the guards at the penitentiary, testified that this defendant walked up behind him and was holding his hand down by his side. Witness testified that he asked the defendant if he had anything, and continued, "he handed me an instrument that was square and was possibly about ten inches long overall, and was ground off to a sharp point on the end and had a plastic handle on it, and the handle was wrapped with adhesive tape, and it had a string tied around it." This instrument was later identified as a sharp-pointed screw-driver. The witness testified further that he did not see the defendant use the instrument in any way, but at the time it was handed to him, it had a red substance on it, which looked like blood. The substance referred to was still on the instrument at the time of the trial.

The Assistant Deputy Warden, Mr. Park Anderson, testified that he made an investigation of the affray, and that this defendant told him that he stabbed Horton.

The defendant offered testimony of two witnesses, William Eugene Eaton, and Larry Jack Horton.

Eaton testified that he stabbed Horton, on the date charged. He also testified that both knives, or cutting or stabbing instruments, were his, and that he had them at the time the incident occurred. He testified that he stabbed Horton once or twice in the back, and "I think three times in the chest. I am not for sure."

On cross-examination Eaton was asked, "Then what did they do with you, after Mr. Harrington got the knife, to keep you from stabbing him the second time? A He was already on his way to the Lieuten-

ant's office when Mr. Harrington grabbed me. He had already been stabbed five to seven times when Mr. Harrington grabbed me."

When Larry Jack Horton, the victim of the assault, was called to testify, he stated in effect that he had no interest in the case, and that he did not know Carico, the defendant. The evidence revealed that defendant, Carico, and William Eugene Eaton were cellmates in the penitentiary.

Defendant first contends in his brief that the information charged more than one crime. We do not agree with this contention. Defendant cites Littlefield v. State, Okl.Cr., 354 P.2d 796; and a companion case, Davis v. State, Okl.Cr., 354 P.2d 466, both of which were reversed.

The information filed in the case at bar can be clearly distinguished from those found in the Littlefield and Davis cases, supra. The information in the instant case charges assault and battery by means of deadly weapons, describes the weapons, the manner in which they were used, and alleges the element, "with intent to kill". The same was not true in the Littlefield and Davis cases. It is evident in the instant case that the county attorney intended to, and did, charge this defendant with assault and battery with a deadly weapon with intent to kill, under Title 21 O.S.A. § 652.

Defendant's second assignment of error is with reference to the testimony of the assistant deputy warden, Park Anderson.

When this witness was called, defense counsel requested the court to take the testimony of witness out of the presence of the jury. Defendant's request was granted, and the jury was excused. Defendant's objection to the testimony of this witness makes reference to a statement made to the witness. Defendant cites Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 in support of his contention.

After the jury was excused, the witness, Park Anderson, testified that when he talked with the defendant, he advised the de-

fendant that any statement he might make could be used "either for or against him".

At this point, the court asked the witness, "What was the reason for talking to this particular defendant?" The witness answered, "Sir, he had been involved in a fight there in the prison, and I wanted to find out what had happened and why."

He testified further that the defendant "told me about the offense he was involved in out there, that he stabbed Horton over a debt." He was asked if defendant at any time told him about wanting a lawyer, and witness stated, "Well along later after the statement he did ask if he could contact his folks, and I told him any time he was ready I would let him, or help him." Witness further stated that defendant did not ask his assistance in procuring a lawyer in his case.

During this inquiry of Mr. Anderson, it became quite evident that Mr. Anderson's duties are administrative. His official title is "Assistant Deputy Warden", but his function or official duties are those of administrative assistant to the Warden. He testified further that the purpose of his inquiry of the defendant was to assemble sufficient facts to make a report for the warden. In his role he was not performing as a "peace officer", but instead as an administrator. He stated the county attorney was advised of the situation and assumed the function of assembling evidence.

In the presence of the jury Mr. Anderson was permitted to testify only to the effect that the defendant stated to him that he stabbed the victim. In making his ruling the court said, "I don't believe that the written statement or his reasons would be admissible, because it might be an accident and he stabbed him, it might be self-defense or excusable."

Title 57 O.S.A. § 132 provides:

"The State Board of Public Affairs shall have the management and control of the penal institutions of this State, located at McAlester and Granite, and may prescribe rules and regulations for the conduct and management thereof. * * *."

The statutes of this State provide that the specific management of the penal institutions of this State is the responsibility of the warden at each institution.

Title 57 O.S.A. § 292 provides:

"The warden, subject to the approval of the board of control or such other authority as shall be provided by law, shall prescribe rules and regulations for the government and management of the Reformatory and defining the duties of the several officers and employees."

The authority prescribed in the above section of the statute first appears in the Session Laws of 1909, and is reported in Snyder's Comp. Laws, 1909 § 5132; R.L. 1910 § 7123, p. 1916; Bunn's Comp. Stat. 1921, § 9262, p. 3078.

■ We hold that it was the intent of the Legislature to include in the meaning of the word "Reformatory", all existing state penal institutions, as reflected by the history of this section of the statutes.

The Legislature in 1915, chap. 57, § 17, abolished the Board of Prison Control, and transferred the duties of that Board to the State Board of Affairs. Tit. 57 O.S.A. § 143.

■■ Under the authority provided by the statutes, the warden of each penal institution has always been, and still is, charged with the responsibility to provide rules and regulations for the government and management of each respective institution. Insofar as the warden is charged with that duty and authority, we hold that it is clearly within his prescribed authority to conduct whatever investigation is necessary to the management of the institution. Likewise, the warden is specifically provided statutory authority to assign duties to the employees of the institution, to fulfill the requirements of government and management thereof.

■ We are of the opinion that the investigation conducted by the Assistant Deputy Warden, Park Anderson, was necessary to the proper administration of the institution; and that it clearly falls within the authority provided by statute. We are also of the opinion that the trial court properly ruled on the admissibility of the evidence complained of by defendant.

There is nothing in the record to indicate that this defendant was denied his right to counsel. Instead, the record shows that the prison official offered to assist defendant in obtaining counsel, whenever he desired. Further, the record shows that defendant was afforded competent legal counsel from the time of his first arraignment in the justice of the peace court, throughout the entire judicial proceedings; and that he was afforded due process of law.

We must, therefore, conclude that Escobedo v. State of Illinois, supra, is not applicable to the facts and circumstances of this case, insofar as the defendant was afforded counsel throughout all stages of his trial.

Defendant's third and last contention is that the court erred in not dismissing the case against this defendant.

■ We do not accept defendant's contention, for the reason the record shows sufficient evidence to justify submission of the case to the jury, and where this is done, the credibility of the witnesses and the weight and value to be given their evidence is for the determination of the jury. See Guthrey v. State, Okl.Cr., 374 P.2d 925, and cases cited therein. We adopt the final paragraph in the Guthrey opinion, which states:

"If there was any believable evidence to support defendant's theory of non-participation in this crime, a different conclusion might have been reached. Though this court is sometimes compelled by the protective feathers of the law to lie flat on its back, it never faces the embarrassment of being compelled to stand on its head in face of uncontroverted evidence from which a logical inference of guilt is the inevitable conclusion."

Therefore, for the reasons herein stated, the judgment and sentence of the District Court of Pittsburg County is affirmed.

BUSSEY, P. J., and NIX, J., concur.