Wadress H. **METOYER**, Jr., Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–726.

Court of Criminal Appeals of Oklahoma.

July 15, 1975.

E. Terril Corley, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Wadress H. Metoyer, Jr., hereinafter referred to as defendant, was charged with the crime of Robbery With Firearms, and convicted on the 16th day of May, 1974, in the District Court, Tulsa County, and sentenced to a term of two hundred (200) years in the custody of the State Department of Corrections. From this judgment and sentence, the defendant has perfected his appeal.

The facts revealed at trial were that at about 8 o'clock on the morning of January 27, 1974, two masked men robbed James R. Norcom, manager of the Manor Motel in Tulsa, Oklahoma. Mr. Norcom, 71 years of age, was unable to identify the defendant due to the fact that his assailants blindfolded, gagged, and then severely beat him.

Mary Roberts, a maid at the Manor Motel, testified that after leaving the linen closet at the motel she proceeded to the office. She stated two black males came out of the motel office and she described one as being "tan, not real dark." She particularly observed this male due to the fact

that he passed very close to her. After she entered the office, she found Mr. Norcom "bloody and laying on the bed." Two days after the crime Ms. Roberts observed a police lineup and identified the defendant as one of the men she saw coming from the office.

Officer Jay Carter was assigned to investigate the robbery. At trial he identified State's Exhibit No. 7 as the adhesive tape taken from the bed at the Manor Motel after it had been removed from the mouth of Mr. Norcom.

Officer Michael Garner stated he received a call over his patrol car radio at approximately 8:15 a. m., January 27, 1974, regarding the Manor Motel robbery and the description of the vehicle used in the robbery. He recognized a car fitting that description and pursued that car at a high rate of speed until the car became stuck after attempting to cut across a yard. The passenger in the car jumped out and fled, dropping several pieces of clothing. The driver, defendant herein, remained in the car and was apprehended and placed under arrest.

Officer Harold Thomas testified that two blocks from the scene of the arrest, he observed Officer Compos and his canine patrol dog tracking. The dog stopped at an entrance under a house where Officer Compos ordered Sylvester Gay to come out. The witness testified he patted Gay down and found a roll of adhesive tape. Special Deputy John Stake crawled under the house and recovered two guns. Other officers of the Tulsa Police Department testified at the trial in support of the same facts heretofore related.

Mr. Mallie Norton, a Tulsa attorney, was called by the defense and testified that at the request of Police Officer Ron Vause he appeared at the lineup for the defendant. He stated, with reference to the lineup, that he was concerned about the difference of height between the individuals. He further testified that he was informed by the police that the defendant had asked for Mr. Earl, the Public Defender, but Mr. Earl was not available and for that reason Mr. Norton participated in the lineup procedure.

Sylvester Gay was the second witness called for the defense. He denied taking any clothes out of the car with him; denied taking any guns under the house; and, denied having any adhesive tape on his person.

The defendant testified in his own behalf and denied that he committed the robbery. The witness admitted he attempted to elude the police, but explained his reason as being because he knew an arrest warrant was outstanding for Sylvester Gay. Therefore, he asserted he was trying to protect his friend. Notwithstanding the introduction into evidence of the waiver of rights signed by the defendant, he further asserted he was not advised of his constitutional rights by Officer Vause during interrogation after his arrest.

Officer Michael Garner was called as a rebuttal witness to identify the individual who ran from the car as being Sylvester Gay.

Officer Ron Vause was recalled by the State to relate the statements made by the defendant during interrogation after defendant's arrest. He testified that he informed the defendant of his constitutional rights and, further, that defendant signed a standard form that set forth the constitutional rights of the accused. The officer related that the defendant also suggested that he would testify against Sylvester Gay, if granted immunity.

Thereafter both sides rested. The jury was instructed by the court, heard the closing arguments and subsequently returned a verdict finding defendant guilty and assessing his punishment at two hundred (200) years' imprisonment.

Three pro se briefs and a brief prepared by defense counsel have been submitted to this Court for review. Many of the assignments of error in each are the same and will be grouped in this opinion. Con-

sideration has been given to each issue raised in all four briefs.

Defense counsel's and defendant's pro se first assignment of error is that failure to permit defendant to have counsel of his choice present for a lineup denied defendant due process of law.

The record reveals that the defense attorney requested an in camera hearing on the Motion to Suppress evidence derived from the lineup. (Tr. 162) Officer Vause of the Tulsa Police Department had conducted the lineup in question and was present for questioning. The trial judge, based upon the evidence presented at the hearing including a photograph of the lineup, concluded that the testimony concerning the lineup identification should not be suppressed.

We agree with the findings of the trial judge. Officer Vause testified that he had informed the defendant the day prior to the lineup that the lineup would be conducted the next morning. On the day of the lineup he asked the defendant if he had contacted an attorney, to which he replied in the negative. Officer Vause then sought Mr. Norton, an attorney, to represent the defendant at the lineup.

In a subsequent in camera hearing, Mr. Norton testified that 35% of his practice was criminal work. He had never been employed by the District Attorney's Office, nor the Police Department. (Tr. 339) Mr. Norton further stated that the defendant had indicated to him that he had wanted Mr. Earl of the Public Defender's Office present. However, the police had been unable to reach Mr. Earl that day. Mr. Norton testified that he explained to all the people in the lineup, including the defendant, that they could not be forced to stand in the lineup. Notwithstanding Mr. Norton's advice, defendant voluntarily participated in the lineup. The witness further stated that he had objected to the height difference but other than that he felt the lineup was conducted fairly. (Tr. 345)

The defendant contends that he was denied due process by not having counsel of his own choice present. In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court stated:

". . . Moreover, we leave open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay. . . ." (388 U.S. 237, 87 S.Ct. 1938)

In a footnote to this statement the Supreme Court further stated:

"Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel."

■ We feel that Mr. Norton represented the defendant at the lineup as adequately and competently as any other attorney for the purpose that counsel's presence is required. The lineup was conducted in a fair and reasonable manner, according to the guidelines of *Thompson v. State*, Okl. Cr., 438 P.2d 287 (1968).

Defense counsel's fourth assignment of error contains two propositions: (1) All evidence and testimony relating to the arrest of Gay should have been excluded and not used against the defendant; and, (2) The defendant further contends in his pro se brief that seizure of the guns from under a house was an illegal search and seizure.

■ The first proposition is controlled by *Williams v. State,* 373 P.2d 91 (1962), in which this Court quoted 22A C.J.S. Criminal Law § 673, page 695, as follows:

" 'The statements and exclamations or acts and conduct of third persons are admissible in evidence when they are so

closely connected with the crime as to constitute part of the res gestae.' "

An examination of the record has revealed that the conduct and acts of Sylvester Gay were so closely connected with the crime as to be part of the res gestae: The description given by the maid, of the assailant and automobile, closely fit the defendant and the car which he was driving 20 minutes after the robbery; Officer Garner noting the resemblance pursued the car until it could go no further; the passenger of the car, Sylvester Gay, fled the stopped vehicle; two guns and white adhesive tape were found with Sylvester Gay while hiding under a house; Sylvester Gay admitted being in the car; and Gay was arrested at approximately the same time as the defendant; all of which was testified to by various officers. We feel the evidence was properly admitted as part of the res gestae. See also, *Wafers v. State*, 444 P. 2d 825 (Okl.Cr.1968); and *Wheat v. State*, 38 Okl.Cr. 119, 259 P. 279 (1927).

■ The second proposition is also without merit. The record reveals that the house from under which the guns were retrieved did not belong to the defendant or Gay. Thus, the defendant has no standing to object to the seizure of the guns. The Supreme Court of the United States held in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973):

"[I]t is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; . . ." (411 U.S. 229, 93 S.Ct. 1569)

See also, *Wafers v. State, supra.*

■ Defendant next alleges in his pro se brief that the reading of the information constituted the use of false evidence. Specifically, defendant objects to the part of the information which alleges:

"Sylvester Eugene Gay [and] Wadress H. Metoyer, Jr. on or about the 27th day of January, 1974, . . . while acting each with the other, [did] rob one J. R. Norcom . . ."

An information is not evidence or proof towards a conviction. Title 22 O.S.1971, § 831, states that the trial begins with the reading of the information. This is to advise the jury of the charges against the defendant. *Miller v. State*, 94 Okl.Cr. 198, 232 P.2d 651 (1951) and *Ethridge v. State*, Okl.Cr., 418 P.2d 95 (1966).

■ Further, in the instant case a motion to quash was filed on February 19, 1974, for the reason of insufficient evidence. No attempt was made to strike the name of Sylvester Gay; only on appeal has the objection been made. The better procedure would have been for the defense attorney to have moved to strike the name of Sylvester Gay from the information. Thus, any possible prejudice would have been avoided. However, the defense failed to timely object to the information and has therefore waived any defect.

In *Wright v. State*, 505 P.2d 507 (1973), this Court held:

". . . It is settled law in Oklahoma that where no demurrer or motion to quash the information is filed, and a plea of 'not guilty' is entered and a trial is had, the defendant waives any defect in the information, except that the court has no jurisdiction of the subject matter and that no public offense has been committed. . . ."

Therefore, we find this assignment of error to be without merit. See also, *Crane v. State*, Okl.Cr., 461 P.2d 986 (1969).

■ Defendant pro se urges that the court erred in admitting a confession without first determining the voluntariness based upon *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The statements in the instant case are not

within the meaning of *Jackson*. Defendant objects to Officer Vause's testimony that defendant, during questioning after his arrest, suggested he would possibly agree to testify against Sylvester Gay. (Tr. 311) It is clear from the record that the defendant was advised of his rights and, further, signed a standard form that sets forth the constitutional rights of the accused. Defendant's statement does not confess to having committed the crime, nor did he make any statements of direct involvement.

█ Defendant pro se asserts that counsel was ineffective. This assignment of error is frivolous. The record reveals that defendant's counsel was competent, thorough and diligent. In *Hatch v. State*, Okl.Cr., 501 P.2d 1396 (1972), this Court held that defendant's attorney did not fail to adequately represent defendant at his trial where the attorney rigorously cross-examined all of the State's witnesses and presented defendant's evidence in a competent manner to the extent that the trial was not a sham, farce, or mockery of justice.

We will next discuss four assignments of error raised by defense counsel. These assignments are the injection of an evidentiary harpoon, excessive sentence, and cumulation of error.

█ The defendant contends that the deliberate injection of an evidentiary harpoon by Officer Vause, accompanied by an accusatory question by the District Attorney, injected incompetent, irrelevant and immaterial evidence into the trial and denied the defendant of a fair trial and due process of law. The transcript reflects, on pages 309 and 310, that Officer Vause of the Tulsa Police Department testified for the State as follows:

"Q. All right sir, will you relate to the jury please what the conversation was that you had with Mr. Metoyer?

"A. I pointed out to Mr. Metoyer that he had been arrested in a particular automobile that fit the description of a car seen leaving the location of this robbery, that he himself fit the description of one of the people involved in the robbery, that the car in the robbery was purported as a stolen car—

"MR. EARL: To which we will object, Your Honor, and move for mistrial and ask the jury to be admonished not to consider, strongly ask for mistrial on that.

"BY THE COURT: Jurors, I'll sustain the objection. I will overrule the last part. I will admonish the jury not to consider the last part of the answer."

Insofar as defendant's objection was sustained and the court admonished the jury not to consider the testimony, the error was not reversible error. See, *Payne v. State*, Okl.Cr., 403 P.2d 791 (1965). In the case of *Tucker v. State*, 89 Okl.Cr. 30, 204 P.2d 540 (1949), this Court held as follows:

". . . In this connection this court has repeatedly condemned the practice of experienced peace officers while on the witness stand making voluntary statements prejudicial to the rights of the defendant on trial. . . ."

In *Green v. State*, Okl.Cr., 481 P.2d 805 (1971), this Court cited with approval the case of *Hattensty v. State*, Okl.Cr., 321 P. 2d 710 (1958), wherein we stated:

"'It has been held that similar remarks may not constitute sufficient grounds for reversal where evidence of guilt is clear, but will be considered in connection with the contention that the punishment was excessive as tending to prejudice the defendant with the jury.'"

\* \* \* \* \* \*

"It has been the practice of this Court that in cases involving 'evidentiary harpoons' where guilt hangs fairly close in the balance, to grant a new trial, while in cases where guilt is strongly estab-

lished and a new trial would undoubtedly result in conviction, this Court will reduce the sentence."

■ Defendant further complains that the closing argument of the prosecutor on page 428 of the transcript, the District Attorney made the following statement:

". . . By the evidence presented each one of them has gotten on this witness stand and lied in order to cover their tracks. That shows you the respect they have got for this system. They're going to lie to you or try to fool you. That's what they want. Beyond any reasonable doubt whatsoever Wadress Metoyer is guilty of this crime. All of this evidence taken together points to the fact that he is guilty of the crime. You can't get away from it. How do you get away from the car they're in? You cannot explain it away. . . ."

Defendant cites *Dupree v. State*, Okl.Cr., 514 P.2d 425 (1973), which was reversed for improper argument. However, the closing argument in the instant case was not of sufficient nature to constitute reversible error.

■ In the instant case, after review of the record, we are of the opinion that the evidence of guilt is clear. However, in view of the prejudicial closing argument and the possible effect of the evidentiary harpoon, even though the jury was admonished not to consider it, we believe the sentence imposed by the jury is excessive and should be modified. We, therefore, are of the opinion the judgment should be affirmed, but the sentence of two hundred (200) years imposed by the jury should be modified to a sentence of fifty (50) years. Therefore, as modified the judgment and sentence is *affirmed*.

BUSSEY, J., concurs in results.

BLISS, J., concurs.