**Milton Clark DANGERFIELD and Reginald Leon Green, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–419.**

Court of Criminal Appeals of Oklahoma.

April 12, 1976.

Don Anderson, Public Defender, Oklahoma County, for appellants.

**664**

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellants, Reginald Leon Green and Milton Clark Dangerfield, hereinafter referred to as defendants, were jointly charged, tried before a jury in a two-stage proceeding and convicted of the crime of Robbery with Firearms After Former Conviction of a Felony in the District Court of Oklahoma County, Case No. CRF–74–2891. The jury fixed punishment at 150 years for the defendant Green and 99 years for the defendant Dangerfield. From judgments and sentences in conformance with the verdicts, the defendants have perfected their timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Jack W. Winter testified that on August 17, 1974, he was employed by Safeway at their 36th and Kelly store as a stocker and worked at night with Mike Vanduker. Shortly before 5:30 A.M., he noticed a hole in the ceiling over the produce area. He also noticed a white Cadillac parked in front of the store with a man slumped over inside. About 7:30 he opened the front door for the produce manager, Bob Hallbaur, told him about the hole in the ceiling and the latter called the store manager. Winter then admitted the meat manager and meat wrapper through the front door. As he and Hallbaur went back to look at the hole a man, whom he identified in court as defendant Green climbed down through the hole, held a gun on them and ordered them to the front. Encountering the meat manager and meat wrapper, he also ordered them to the front and ordered the safe to be opened. Winters said no one present could open the safe and that the manager was on the way. Green again demanded that someone open the safe. The gun discharged striking Winter in the back of the head, stunning him, after which Green told Winter "he was sorry, he didn't

mean to". Green then had all employees lie on the floor face down. Next Green had Winter unlock the front door and go back and lie down on the floor, and had Hallbaur wait by the front door to admit the manager. Another robber entered, then shortly the manager, George Taylor, arrived. As Taylor had some difficulty opening the safe, Green said he would count ten then start shooting. Taylor got the safe open. The other robber struck Allene Cravens, the meat wrapper, in the head with a pistol as she was trying to tend Winter's wound. After getting the money and taking Winter's billfold which contained his driver's license, the robbers left. Winter was taken to St. Anthony's where brain surgery was performed. A few days later a detective showed Winter about six pictures from which he selected one as that of Green. Winter subsequently identified State's Exhibit 3 as his driver's license taken in the robbery.

Bob Hallbaur testified that he was the produce manager at the store and arrived there about 6:40 A.M. on August 17, being admitted by Jack Winter who called his attention to the hole in the rear ceiling. Hallbaur then went to call the manager. As he and Winter returned to look at the hole defendant Green came through it and held a .22 caliber blue steel revolver on them, ordering them to the front to open the safe. Winter said no one present could open the safe and as they were being marched to the front Green shot Winter in the back of the head. Green gathered the employees and had all five lie on the floor, threatening to kill them all if the safe was not opened. He then had Winter open the front door and defendant Dangerfield entered. The latter held a gun on Hallbaur and had him go to the front door. Shortly the manager came in and the defendants ordered him to open the safe. While Green and the manager were in the office, Hallbaur stood in front of the office for about two minutes before Dangerfield made him lie face down on the floor. Dangerfield then proceeded to rob each employee,

striking the meat wrapper with a pistol. The two robbers then left in the white Cadillac. Hallbaur was subsequently shown a group of eight or ten photographs by the police from which he selected one of the defendant Dangerfield. He identified State's Exhibit 8, a .22 caliber pistol, as being similar to the pistol which Green used in the robbery.

Dr. Stanley Pelofsky then testified that he was a neurosurgeon and that on August 17, 1974, he operated on Jack Winter, removing a blood clot and metal fragments from the head at the site of a gunshot wound.

George Taylor testified that he was store manager and arrived about 7:00 A.M. on August 17, noticing a white Cadillac parked in front. As he entered, one of the robbers put a gun on him and ordered the safe opened. He opened it and then lay face down on the floor as he was ordered. He identified Green as one of the robbers but could not identify Dangerfield. After the robbery the store was short $3,800.

Officer Michael Fairbanks of the Kansas City Police Department testified that he stopped a Cadillac on August 20, 1974, in Kansas City and talked to Green and Dangerfield. The vehicle had been reported stolen. The latter stated his name to be Jack Wayne Winter and produced an Oklahoma driver's license, State's Exhibit 3, reflecting same. Dangerfield gave the name M. C. Johnson. They were given the Miranda warning and Dangerfield consented to the search of their motel room for papers showing title to the vehicle. In the motel room the .22 caliber pistol, State's Exhibit 8, was found along with a picture indicating that M. C. Johnson was in fact defendant Dangerfield.

Detective Donald Waymire of the Kansas City Police Department then testified that he asked Dangerfield about the Cadillac. Dangerfield, who claimed he was M. C. Johnson, said he had reported the car stolen in Oklahoma City, recovered it, and forgot to notify police. He consented to a room search when he couldn't show documents of title. After the room search Dangerfield admitted that M. C. Johnson was not his true name. Green also admitted that Jack Winter was not his true name.

The testimony of Alton Keith Freeman, the meat manager, did not differ substantially from that of the other store employees. He could not identify Dangerfield as the second robber. He selected Green's photograph from about half a dozen as being one of the robbers. The State then rested.

Defendant Green then testified in his own behalf that he left Oklahoma City on August 16, 1974, with Milton Dangerfield, who owned the Cadillac. They arrived in Kansas City early the morning of August 17, 1974. He acquired Winter's driver's license at a gambling house in Kansas City so he would have some identification to avoid Logan County, Oklahoma, criminal charges. He denied being in the Safeway store, denied robbing it and denied shooting Winter.

Dangerfield did not testify. Green's prior convictions were admitted and Dangerfield's prior convictions were stipulated.

The defendants' first assignment of error urges that the trial court committed reversible error when it denied defendant Green's motion for mistrial after Officer Fairbanks, in response to a question by the prosecutor, volunteered the following comment, to-wit:

"Q   All right, Did you have occasion to meet them at anytime?

A   Yes, I did.

Q   When was that, officer?

A   August 20, 1974.

Q   And where was that at?

A   At Linwood and Truce.

Q   How did you meet them, please? I mean, what were they doing?

**666**

A .We stopped the vehicle. It was reported to be a stolen vehicle out of Oklahoma City, Oklahoma.

Q All right.

DEFENDANT GREEN: I am not going for that.

THE COURT: You be quiet.

MR. JORDAN: Comes now defendant Green and moves for a mistrial based on the statement that he stopped this vehicle because it was a stolen car out of Oklahoma City, evidence of another crime. We cannot stand for that in this trial and we do at this time ask for a mistrial.

THE COURT: I am going to overrule your motion for mistrial. Ask your next question."

The defendants urge that the above voluntary comment by Officer Fairbanks was an "evidentiary harpoon". In support of said contention defendants cite the recent case of *Metoyer v. State,* Okl.Cr., 538 P.2d 1066. In *Metoyer* a police officer made the following voluntary statement, to-wit:

"Q. All right sir, will you relate to the jury please what the conversation was that you had with Mr. Metoyer?

A. I pointed out to Mr. Metoyer that he had been arrested in a particular automobile that fit the description of a car seen leaving the location of this robbery, that he himself fit the description of one of the people involved in the robbery, that the car in the robbery was purported as a stolen car—

MR. EARL: To which we will object, Your Honor, and move for mistrial and ask the jury to be admonished not to consider, strongly ask for mistrial on that.

BY THE COURT: Jurors, I'll sustain the objection. I will overrule the last part. I will admonish the jury not to consider the last part of the answer."

This Court held that insofar as the trial court sustained the objection and admonished the jury to disregard the remark, the er-

ror was not reversible error. However, under the fact situation of that particular case the judgment and sentence appealed from was modified. See also *Green v. State,* Okl.Cr., 481 P.2d 805.

In the instant case, although defendant Green objected to the statement and asked for a mistrial, no admonishment was requested. The evidence of guilt is overwhelming and defendant Green, in taking the stand to testify in his own behalf, admitted numerous prior convictions and further testified that he was in Kansas City to avoid criminal charges in Logan County, Oklahoma. It should also be noted that Officer Fairbanks in making his voluntary statement did not indicate that either of the defendants had actually stolen the automobile.

As stated in *Robinson v. State,* Okl.Cr., 507 P.2d 1296, ultimately the question to be answered in such a situation is whether the defendant's rights to a fair trial have been materially prejudiced or whether the "harpoon" amounted to harmless error. In the instant case we believe the error to have been harmless for the reasons set out above. The defendant's first assignment is without merit.

The defendants' second assignment of error urges that the trial court erred in admitting into evidence the gun and other items found in their motel room. In support of their contention the defendants argued that the written consent to search executed by defendant Dangerfield was not voluntarily and intelligently given, but was the result of threats by police officers who held the defendants at gun point.

From a complete reading of the record we find no indication whatsoever, other than the amended brief of the defendants, that the waiver was obtained by threats or other form of coercion. The issue of the voluntariness of the consent was never raised before the trial court in chambers or before the jury. As stated in our recent case of *Sands v. State,* Okl.Cr., 542 P.2d 209, the legality of the search and seizure based upon consent was properly a

determination for the trial court. In the instant case no evidence was presented to controvert the fact that the waiver was voluntarily and intelligently given. Neither defendant testified during the evidentiary hearing and no objections were made when the items found during the search were introduced and admitted into evidence. The defendants' second assignment of error is without merit.

■ The defendants' third assignment contends that the State failed properly to prove that each defendant had been convicted of former felonies. The record reveals that defendant Green admitted former convictions when he testified during the first stage of the proceeding. During the second stage of the proceeding, his defense counsel agreed that said convictions had been admitted and offered no objection to the introduction of the judgments and sentences reflecting same. Defense counsel for defendant Dangerfield also stipulated to his client's former convictions and under questioning of the trial court the defendant also agreed.

Defendant Green specifically urges that one conviction was not final since it was still in the process of appeal in the Tenth Circuit Court of Appeals. However the defendant admits that the conviction was affirmed by this Court. We also take judicial notice of our records in Case No. 16624. The mandate was spread of record on October 15, 1971, and the appeal became final as of that date. It should also be noted that if this Court were to hold that the introduction of Green's third conviction now in the process of a Federal appeal was error, said error would be harmless since the other convictions were in all respects final and the evidence of guilt in the instant case is great. The defendants' third assignment is without merit.

■ The defendants in their brief further urge that the verdicts were not supported by the evidence and that the punishment assessed each by the jury was excessive.

An examination of the record reflects that the jury was justified in finding that the defendants committed the crime charged. No substantial right of either defendant has been violated and they each received a fair and impartial trial. This Court has held on many occasions that where there is competent evidence in the record from which a jury would reasonably conclude that a defendant is guilty as charged the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences might be drawn therefrom. *Williams v. State,* Okl. Cr., 373 P.2d 91.

■ Concerning the punishment assessed by the jury, we cannot conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. In conclusion we need only observe that the evidence of guilt is clear and that, were it not for the grace of God, each defendant would have been standing trial for murder. *Barnhart v. State,* Okl.Cr., 518 P.2d 1123; and *Callins v. State,* Okl.Cr., 500 P.2d 1333.

It is, therefore, the opinion of this Court that the judgments and sentences appealed from should be and the same are hereby *AFFIRMED.*

BRETT, P. J., concurs.

BUSSEY, J., specially concurring.

BUSSEY, Judge (specially concurring):

I concur in all respects with the opinion of Judge Bliss, and desire only to add that, in my opinion, the defendants' assertion that the testimony of Officer Fairbanks of the Kansas City Police Department, that he stopped the Cadillac for the reason that it had been reported stolen from Oklahoma, was an "evidentiary harpoon" is not supported by the record before us.

It is abundantly clear from the testimony of Detective Waymire of the Kansas City Police Department, that defendant Danger-

field acknowledged that the vehicle had been stolen from him, recovered by him, and that he had failed to notify the police. In view of this testimony and no other evidence tending to establish that the car was, in fact, a car stolen either by defendant Dangerfield or defendant Green, it is impossible to see how the jury could have considered that the car was in fact stolen by the defendants and, therefore, could not have constituted evidence of another crime.