**Timothy Carl YOUNG, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–41.**

Court of Criminal Appeals of Oklahoma.

June 23, 1976.

Richard A. Hoffman, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## MEMORANDUM OPINION

BLISS, Judge:

Appellant, Timothy Carl Young, hereinafter referred to as defendant, was charged, tried and convicted in the Tulsa County District Court, Case No. CRF–75–811, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435. His punishment was fixed by jury at a term of imprisonment of one hundred (100) years. From this judgment and sentence defendant has perfected a timely appeal to this Court.

In the instant appeal, defendant does not challenge the sufficiency of the evidence upon which he was convicted and therefore only a brief summary of the facts will follow.

Jane Johnson testified that she was a receptionist for Dr. William Perry whose office was located at 1712 North Quaker in the Seminole Center, Tulsa County, Oklahoma. While so employed on the 11th day of April, 1975, she closed the office after Dr. Perry had left, at approximately 6:10 p. m., leaving the office secured with the lights out. She proceeded to a laundromat located in the same complex and remained there until approximately 6:45 p. m. She then walked back to her car, located near the doctor's office, at which time she noticed a car parked near her's which had not been there previously. Also, she noticed that the lights in the doctor's office had apparently been turned on after she had closed the office. Upon investigation of the office, she observed a basin on the floor which had not been there when she had left. She then turned off the lights, locked the door and proceeded to the Beauty Palace, across the street, to call the police and report a breakin. Some four to five minutes after leaving the office to call the police, she observed an individual, whom she identified as the defendant, coming out of a vacant building adjacent to the doctor's office. The defendant was wearing maroon trousers covered with "chalky stuff." She testified that she knew the individual to be the defendant for the reason that the defendant had been a patient of Dr. Perry's. She further testified she observed the defendant return to the light green Ford parked in the vicinity of her car and she made note of the license number of the vehicle, ZD 3178. She said that upon the defendant's return to his car, in which another person was sitting, the vehicle would not start and

eventually the vehicle had to be pushed to be started. The police arrived some ten to fifteen minutes later and upon investigation of the doctor's office she observed a hole to have been kicked in the rear wall, and that the office was in disarray. She testified she could not recall the defendant's name the first time the investigating officer inquired, but she was able to recall his name after checking the records in the office. She also testified that she did not give the defendant permission to enter the doctor's office.

Dr. William Perry testified that his office had been located at 1712 North Quaker in Tulsa, Oklahoma, for approximately seven years. He stated that the office space next to his office had been vacant for approximately one year. He further stated that he had occasion to know the defendant as the result of having treated him for weight control and various injuries in the past. He further testified that he had not given the defendant permission to enter the office on the 11th day of April, 1975.

Robert L. Doss testified he was a police officer assigned to the patrol division and was so employed on the 11th day of April, 1975, at which time his working hours were from 2:45 p. m. to 11:00 p. m. On that day, in response to a call, he proceeded to 1712 North Quaker at approximately 6:45 p. m. where he met with the receptionist at Dr. Perry's office. He testified he investigated the office and observed that the office had apparently been broken into as it was in disarray and he also observed a hole in the wall. He said that he was given the name of the defendant, a description of the vehicle observed by Mrs. Johnson, including the license tag number.

Dan Higgins testified that he was employed as a pressman for Allied Printers and that he was also employed part-time by Glanz Security Patrol. He said that while on patrol during the early morning hours of April 12, 1975, at approximately 1:45 a. m., he observed a blue-green 1959 Ford occupied by three people in the vicinity of the Lakewood Manor Apartments. Upon investigation of the vehicle, he conversed with one of the individuals in the automobile, whom he identified to be the defendant, and that after receiving conflicting stories from the occupants he called the manager of the apartments and the police. Thereafter, the police arrived and arrested the defendant.

Godfrey Gardner testified that he was the police officer who arrested the defendant on the 12th day of April, 1975. He testified that at the time of the arrest the defendant was wearing maroon pants and was driving a late 1950s model green Ford with license tag number ZD–3178. The State then rested.

The first witness for the defense was Lillian Boyd who stated she was business manager for Reed Enterprises, which was owned by Dr. Guy Reed, and was custodian of the medical records. Having examined the files in Dr. Reed's office, she noted that the defendant had been receiving treatment from Dr. Reed for a weight problem and that the defendant had received treatment on the 11th day of April, 1975, for "severe inflammation and edema of lacerations." According to the office records, Dr. Reed dressed the injury and administered Mycitracin.

John Brammer testified that he was an emergency medical technician employed by the Tulsa County Sheriff's Office and was so employed during the month of April, 1975, and also testified that he was custodian of the medical records. On cross-examination he testified that at the time of defendant's arrest defendant's hands were infected, with an accumulation of fluid or "edema."

Larry C. Lacebe testified that he was a police officer for the City of Tulsa and was photo lab technician. He identified the defense exhibit as being a police mug shot taken of the defendant during the early morning hours of April 12, 1975.

Amanda Evelyn Young testified that she was the mother of the defendant and that the defendant had been living at home.

She said that the defendant's hands had been cut and had been sutured approximately one week before his arrest. She further testified that the defendant's clothes worn at the time of his arrest were released to her from the Police Department and that said clothes were blue in color and the trousers did not have cuffs. The defense then rested.

In rebuttal for the State, Officer Lacebe was recalled to the witness stand and testified that at the time of defendant's arrest the trousers which were worn by the defendant had cuffs.

Don Ritz testified in rebuttal for the State that he was a Deputy Sheriff of Tulsa County and that he released the clothes worn by the defendant at the time of his arrest to Mrs. Young. He testified that said clothing was red. Also, he testified that maroon was a shade of red.

In further rebuttal by the State, Jane Johnson was recalled and stated that she did not recall whether or not the defendant had a beard or mustache at the time she observed the defendant on 11 April, 1975. She further testified that she did not recall whether or not the defendant had bandages on his hands at that time.

In surrebuttal, Don Ritz testified that he did not recall any white chalky material on the clothing worn by the defendant at the time of his arrest. The defense then rested.

The defendant's first assignment of error asserts that the trial court erred in sustaining the State's motion in limine, thereupon limiting the scope of the cross-examination of State's witnesses by counsel for the defendant. In support thereof, the defendant simply makes a broad allegation that cross-examination is not a proper subject for limitation by the trial court.

 The State correctly notes that the defendant as the aggrieved party to the trial court's ruling has failed to present a complete record as the motion in limine and the details thereof are not contained in the appellate record. Further no particular offer of proof was made by defense counsel. Therefore this Court is precluded from determining whether or not the trial court abused its discretion. See, *State v. Abbott,* Okl.Cr., 545 P.2d 792 (1976).

Defendant's second assignment of error asserts that he was denied due process of law by the use of prior felony convictions for the purpose of enhancement. The defendant argues that the first felony conviction alleged by the State in the second page of the information was a conviction sustained by the defendant while he was a juvenile. Thus, the defendant argues that such conviction was sustained under a statute which was determined to be unconstitutional by the Tenth Circuit Court of Appeals in *Lamb v. Brown,* 456 F.2d 18 (10th Cir. 1972); *Radcliff v. Anderson,* 509 F.2d 1093 (10th Cir. 1974). The defendant submits that this assignment of error stands primarily for the purpose of maintaining a record should the Supreme Court of the United States decide to direct its attention to the current conflict existing between the decisions of this Court and the Tenth Circuit of the United States Court of Appeals.

 We also note that the defendant alleges that he has supplemented the record of this case with a certified copy of the information used as the basis for the first felony conviction, and also a copy of the defendant's birth certificate. The defendant simply alleges that he was under the age of eighteen (18) years at the time he sustained the first felony conviction. We find no record of the defendant's age at the time of his sustaining the first felony conviction, and therefore the defendant has failed to support his argument on appeal. See, *Pierce v. State,* Okl.Cr., 495 P.2d 407 (1972). We further find no reason to deviate from our previous decision in *Dean v. Crisp,* Okl.Cr., 536 P.2d 961 (1975), which would be applicable if the defendant was between the age of sixteen (16) and eighteen (18) years at the time of sustaining his first felony conviction alleged by the State in the second page of the information. Also see, *Carbray v. State,* Okl.

Cr., 545 P.2d 813 (1976). For the above and foregoing reasons we find the defendant's second assignment of error to be without merit.

Defendant's third assignment of error asserts the prosecutor made comments and engaged in conduct throughout the course of the trial and particularly during closing argument which were calculated to incite the passion and prejudice of the jury. Defendant, therefore, asserts he was denied due process.

■ The defendant particularly refers to the prosecution's reference to crimes other than the one for which the defendant stood charged. The defendant first complains of the testimony given by Mr. Higgins which is reflected in the record as follows:

"A. I had been advised that there had been an attempted first degree burglary the night before that, in an apartment unit about 50 to 75 feet from where I found Mr. Young." (Tr. 114)

In the context of the record we simply do not find this to be evidence of the defendant's involvement in other crimes.

The defendant further complains of the testimony of Godfrey Gardner elicited by the prosecution on cross-examination and on redirect which is reflected in the record as follows:

"A. No, sir. I didn't take Tim Young to jail. Officer Uhles did. He made the arrest, and transported him to jail.

"Q. Okay, sir.

"MR. BYARS: No further questions.

"(RE-DIRECT EXAMINATION) BY MR. WILLIAMS:

"Q. Sir, he was taken in for something else, wasn't he?

"A. Yes, sir.

"MR. BYARS: Objection.

"THE COURT: Sustained.

"(WHEREUPON THE FOLLOWING PROCEEDINGS WERE HELD AT THE BENCH AND OUT OF THE HEARING OF THE JURY.)

"MR. WILLIAMS: Your Honor, he opened it up.

"MR. BYARS: Comes not the defendant, Timothy Carl Young, and moves for a mistrial for the reason that they have injected evidence of another crime, which they purport that he did, and it has prejudiced this jury, and I move for a mistrial.

"MR. WILLIAMS: Your Honor, he has been trying the entire time to make it look like these officers have done something wrong, which they haven't done. They were proper in their arrest.

"THE COURT: Drop it; don't ask anymore about it.

"MR. BYARS: I would like to have the jury admonished, also, to disregard that last statement.

"(WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD IN FRONT OF THE JURY.)

"THE COURT: The jury is advised that the defendant is on trial for only the crime of breaking into Dr. Perry's office, and he's on trial for no other offense. They will remember that.

"MR. WILLIAMS: I have no other questions of this officer, Your Honor.

"MR. BYARS: No questions.

"MR. WILLIAMS: Your Honor, may I have an opportunity to put Officer Doss back on for the purpose of introducing State's Exhibit Number 1?

"THE COURT: Yes.

"MR. WILLIAMS: Thank you.

"(WHEREUPON, AN OFF THE RECORD DISCUSSION WAS HERE HELD OUT OF THE HEARING OF THE JURY.)

"MR. WILLIAMS: If he has no objection to the introduction of State's Exhibit Number 1, the state would

move to introduce State's Exhibit Number 1 into evidence.

"MR. BYARS: No objection.

"THE COURT: It will be admitted.

"MR. WILLIAMS: With that, Your Honor, the state would rest.

"MR. BYARS: Judge, it's 11:15, and I have some witnesses on call that I would like to call in, and if we can have until 1:30, and start back up at 1:30, I would appreciate it.

"THE COURT: Okay. I don't imagine the jury would object to a long lunch hour, so we'll recess until 1:30. And you'll still not discuss the case among yourselves, or with anyone, or permit anyone to discuss it with you until it is finally submitted to you, and do not learn anything by independent investigation, and avoid any publicity in the matter. Do not make up your minds until after you have heard all of the evidence.

"With that, we'll recess until 1:30.

"(WHEREUPON, A RECESS WAS HERE HELD.)

"THE COURT: Are we ready to proceed?

"MR. WILLIAMS: The state is ready.

"MR. BYARS: The defense is ready.

"THE COURT: Ladies and gentlemen of the jury, it has been stipulaeted between counsel for the state and counsel for the defendant that Timothy Carl Young has no other charges pending against him at this time, other than the one he's being tried for now, nor was he convicted of any crime arising out of the incident at the apartment complex on Lakewook (sic), nor was he put to a jury trial for such.

"MR. BYARS: Thank you.

"MR. WILLIAMS: Thank you, Your Honor. The state would so stipulate." (Tr. 121–124)

██ We find that any error which may have occurred in Gardner's testimony relating that the defendant had been taken into custody apparently for some other crime does not constitute reversible error and is harmless in light of the trial court's sustaining the defendant's objection, admonishing the jury and especially in light of the stipulation entered into between the parties. See, *Metoyer v. State,* Okl.Cr., 538 P.2d 1066 (1975); *Anderson v. State,* Okl.Cr., 541 P.2d 1091 (1975); and, 20 O.S. 1971, § 3001.

The defendant further complains of a particular prosecutorial comment which the defendant asserts was an attempt to impugn the dignity of defense witness Young, and thus lessen her credibility.

██ We certainly do not condone conclusionary remarks by the prosecution. However, in the instant case we find no error occurred for the reason that the prosecutorial remark was directed to the court and was not inherently prejudicial.

We have examined the totality of the closing argument in the instant case and we find no grounds for modification of the sentence imposed. See, *Tucker v. State,* Okl.Cr., 499 P.2d 458 (1972).

██ The defendant's final assignment of error asserts that the sentence imposed is excessive. We need only note the sentence imposed was within the range established by statute and under the particular facts and circumstances of the instant case, and in light of the defendant's prior criminal record we do not find the sentence to be excessive. See, *LaRue v. State,* Okl. Cr., 404 P.2d 73 (1965).

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, AFFIRMED.

BRETT, P. J., specially concurs.

BUSSEY, J., concurs.

BRETT, Presiding Judge (specially concurring).

I concur that this conviction should be affirmed, but I consider the sentence of of one hundred (100) years to be excessive.